# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2003-KA-01295-SCT

*TORRI L. SANDERS AND SHERRY SUE*
*JOHNSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/2003 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | ROBERT SNEED LAHER |
| | LOUIS JULIAN HOLLIDAY, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. DANIEL HINCHCLIFF |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED -11/09/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., GRAVES AND DICKINSON, JJ.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.     This is a depraved heart murder case brought against two shoplifters who were involved in a fatal car crash at the end of a highspeed chase. The question presented is whether the trial court abused its discretion in refusing to sever the case to allow separate trials for the two defendants.

### BACKGROUND FACTS AND PROCEEDINGS

¶2.     On the morning of February 21, 2002, Sherry Sue Johnson went to Torri L. Sanders's home in White House, Tennessee, and convinced Sanders and another woman, Astin Dile, to accompany her on a shoplifting spree in Alabama. Although Sanders and Dile initially declined to go, they changed their minds. The three women set out in Johnson's car to Alabama, where

they used a specialized shoplifting scam to "hit" several Wal-Mart stores. Upon arriving at the Wal-Mart in Mussel Shoals, Dile and Sanders went inside to purloin merchandise, while Johnson waited behind the wheel of the getaway vehicle. As they practiced their thievery, Dile triggered an alarm, prompting a Wal-Mart associate to ask to see a receipt and the contents of a box she and Sanders were taking from the store. Rather than comply with the associate's request, the two women ran to the getaway vehicle and fled the scene.

¶3. Concerned they were being followed by a police officer, Johnson pulled into a stranger's driveway, and the women waited for thirty to forty-five minutes until they thought it was safe to continue their getaway. Sanders then took the wheel of the getaway vehicle, Johnson moved to the passenger's seat, and Dile sat directly behind her in the backseat.

¶4. A police officer spotted the getaway car as it left the driveway. Ignoring the officer's flashing blue lights, the women fled, and a highspeed chase began. Sanders sped through residential areas and ran through intersections, stop signs, and red lights until she made her way onto Highway 72. The officer in pursuit never saw brake lights. At one point, Johnson grabbed the wheel and steered the car into the median and around two large trucks which were blocking the lanes at the request of the police. Sanders also flew through both stationary and rolling roadblocks at speeds (according to Dile's testimony) of at least 110 miles per hour.

¶5. A Tuscumbia officer testified that, during the highspeed pursuit, he observed the occupants of the vehicle laughing and carrying on a conversation. Johnson was on the phone most of the time, while Sanders was smoking cigarettes. A Cherokee police officer who later joined the chase was nearly run off the road.

¶6.    As Sanders continued to drive, Johnson served as navigator, consulting a road map to find the best escape route.  Dile testified that, rather than trying to get Sanders to stop, Johnson continuously yelled, "go, go, go!"  During the chase, Johnson explained to Dile that they could not stop because she and Sanders would have their probations revoked and they would have to go to jail.[1]  At some point, however, Johnson accepted the inevitable and called her husband to arrange bail money.

¶7.    The defendants entered a busy commercial area of Corinth, Mississippi, at a high rate of speed.  Sanders ran through a red light, hit the brakes, and crashed at 67 miles per hour into the side of a Chevy Cavalier driven by 36-year-old Kathy Hollands.  Also in the Cavalier were Hollands's daughter, Brandy, 17, and Brandy's best friend, Jennifer Parsons, 18.  All three women in the Cavalier were killed.  The police arrived only seconds after the wreck.

¶8.    Sanders and Johnson were indicted on March 21, 2002, on three counts of depraved heart murder.  On March 7, 2003, Johnson filed a motion to sever the cases, which the trial court denied.  The case against both women proceeded to trial in Alcorn Circuit Court on March 24, 2003.  At the conclusion of the trial, the jury found both defendants guilty on all counts, and on March 27, 2003, they were each sentenced to three consecutive life sentences in the custody of the Mississippi Department of Corrections.

¶9.    On April 16, 2003, the defendants filed a Motion for New Trial, which the trial court denied.  The defendants then appealed to this Court,[2] raising only one substantive issue for our

---

[1] Johnson had been convicted of theft and was on probation.  Sanders had been convicted of DWI and possession of a Schedule IV controlled substance and was on probation.

[2] The defendants state in their Notice of Appeal that they are appealing from the trial court's denial of their joint Motion for New Trial, wherein the issue of severance was listed as one ground for requesting

consideration, that is, whether the trial court erred in not severing the case and allowing the defendants to have separate trials.

## DISCUSSION

¶10. Rule 9.03 of the Uniform Rules of Circuit and County Court Practice provides that "[t]he granting or refusing of severance of defendants in cases not involving the death penalty shall be in the discretion of the trial judge." Therefore, we will review the trial court's denial of the defendants' motion to sever, and reverse only for abuse of discretion. *King v. State*, 857 So. 2d 702, 716 (Miss. 2003).

¶11. Both this Court and the United States Supreme Court have recognized the appropriateness and importance of joint trials. *Cavett v. State*, 717 So. 2d 722, 727 (Miss. 1998) (citing *Richardson v. Marsh*, 481 U.S. 200, 210, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987) ("Joint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability – advantages which sometimes operate to the defendant's benefit.")). Defendants jointly indicted for a felony are not entitled to separate trials as a matter of right. *Price v. State*, 336 So. 2d 1311, 1312 (Miss. 1976).

¶12. "[T]he decision whether to grant a severance depends on whether the severance is necessary to promote a fair determination of the defendant's guilt or innocence." *Carter v. State*, 799 So. 2d 40, 44 (Miss. 2001) (citing *Stevens v. State*, 717 So. 2d 311, 312 (Miss. 1998)). The trial court must consider a number of criteria when ruling on a motion to sever:

---

a new trial. Although we have not been presented with an order denying the original Motion to Sever, we will nonetheless consider the merits of the defendants' assignment of error based on the denial of the Motion for New Trial.

4

These criteria are whether or not the testimony of one codefendant tends to exculpate that defendant at the expense of the other defendant and whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other. Absent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion.

*Hawkins v. State*, 538 So. 2d 1204, 1207 (Miss. 1989) (citing *Duckworth v. State*, 477 So. 2d 935, 937 (Miss. 1985)).

¶13.    The defendants frame their assignment of error in two parts, both of which are addressed as follows.

### I.    Denial of the defendants' motion to sever

¶14.    Both defendants assert the trial court erred in denying their motion to sever. Both defendants also repeatedly argue the trial court was informed that an integral part of their individual defenses would be the casting of blame and culpability for the crash toward the other. Therefore, they say, the trial court improperly refused to sever the trial.

¶15.    There are two *Duckworth* factors to be considered by a trial court when determining whether or not to sever a trial: (1) whether the testimony of one co-defendant tends exculpate that defendant at the expense of the other, and (2) whether the balance of the evidence tends to go more to the guilt of one defendant than the other. 477 So. 2d at 937. The overarching consideration when evaluating these factors is whether the defendants would be prejudiced by a joint trial. *Id.* Sanders focuses on the first factor, while Johnson primarily relies on the second. However, both defendants' arguments fail to establish that either defendant was prejudiced by the joint trial. *King*, 857 So. 2d at 716.

### A. Co-defendants' testimony

¶16.    Sanders asserts that her testimony – that she was less than a voluntary participant in the shoplifting spree prior to the fatal wreck – exculpated herself at Johnson's expense. Sanders also claims that she was coerced into going to Alabama by Johnson, told to drive after hiding out from the police in Mussel Shoals, and ordered to continue driving after the police gave chase. Finally, Sanders testified that Johnson pinned her against the accelerator and controlled the vehicle during most of the chase, so her actions were done under duress.

¶17.    Johnson does not provide any specific examples of how her testimony exculpated her at Sanders's expense. She generally alleges that the "statements given by each co-defendant to the police subsequent to their arrest" and the strategy of assessing more blame on the other for the crash demonstrate the exculpatory nature of each defendant's testimony. Her argument under the second *Duckworth* factor – that she was not the person who crashed the car – may also be evaluated under the exculpatory testimony factor.

¶18.    The State argues that the defendants did not actually offer any exculpatory evidence. In fact, "both women virtually confessed to the crime during their testimonies, thus inculpating themselves." Both testified to their own guilt, as well as to the guilt of the other. Each consented to and performed acts that were part of the crime, making them principals acting in concert. Because they aided and abetted each other, neither defendant exculpated herself or inculpated the other.

¶19.    We find merit in the State's position on this factor. Sanders says our decision in *Hawkins* implies that any conflict of interest created by a co-defendant's testimony necessitates severance. However, there are numerous factual differences between *Hawkins*

6

and the case at bar. In finding that severance was required in *Hawkins*, the Court based its decision on the following scenario:

> **Hawkins did not testify in his own defense**, he opted to rest after the State's case. At that point in the trial the State's witness Ms. Brown had identified both Hawkins and [his co-defendant] Amos as the robbers. **Amos then proceeded to testify stating he was not in the store but that Hawkins had gone back to the store. This testimony tends to exculpate Amos at the expense of Hawkins.** The jury now has to weigh Amos' credibility against Ms. Brown while **Hawkins' silence is detrimental in light of Amos' testimony**. Also Amos' testimony disrupts the balance of evidence. His testimony helps corroborate Ms. Brown's testimony that Hawkins was in the Charter Food Store.

538 So. 2d at 1207 (emphasis added). In this case, both defendants testified on their own behalf, and neither of them denied participation in the activities leading up to the crash. Each defendant's testimony merely sought to lessen her personal responsibility for the crime.

¶20. Joint trials that violate this factor tend to involve co-defendants with inconsistent defenses. For example, in *Tillman v. State*, 606 So. 2d 1103, 1106 (Miss. 1992), *overruled in part on other grounds by* ***White v. State***, 785 So. 2d 1059, 1061 (Miss. 2001), Tillman testified that he was not even with his co-defendants, Stevenson and Campbell, on the night of the burglary, but that they had borrowed his truck. Tillman also testified that he later found the stolen merchandise at his house and told Stevenson and Campbell to take the items elsewhere. *Id.* Stevenson, on the other hand, testified that he had not borrowed Tillman's truck for any purpose and was in fact at a friend's house the night of the burglary. *Id.* The Court found that Tillman's and Stevenson's defenses were directly in conflict, leaving the jury with the impression that both were lying. *Id.* Therefore, the trials should have been severed. *Id. See also* ***Stevens***, 717 So. 2d at 312-13 (defendant was prevented from raising a defense because

7

of an order in limine based on his co-defendant's motion; inability to raise a defense because of the joint trial required severance upon remand).

¶21.   In only one case has this Court found that mere blame-shifting, rather than a defendant's attempt to fully exculpate himself at his co-defendant's expense, necessitated severance. *See Payton v. State*, 785 So. 2d 267, 269-70 (Miss. 1999). Like many other severance cases, though, *Payton* involved co-defendants with completely inconsistent defenses: one defendant denied the allegations against him altogether while the other admitted some involvement but primarily laid blame with his co-defendant:

> Payton was prejudiced by [his co-defendant] Marshall's testimony and defense strategy in general. This strategy was an attempt by co-defendant Marshall through his testimony and that of his witness to mitigate his potential dual life sentences by shifting as much blame as possible to Payton, **whose defense was a general denial of the allegations**. While it is true that Marshall did not attempt to fully exculpate himself, the blame-shifting is apparent. As the Court of Appeals dissent pointed out, Marshall's defense was successful to Payton's detriment as evidenced by the **disparity in sentencing verdicts**.

*Id.* (Emphasis added).

¶22.   In this case, both Sanders and Johnson testified as to their own guilt as well as to the guilt of the other. Neither of them denied shoplifting, fleeing the police afterwards, or crashing into the victims' car. No one was prevented from raising a defense based on the joint trial, and their defenses were not inconsistent with one another. Additionally, both Sanders and Johnson received the same sentence.

¶23.   Sanders's attempt to establish a defense of duress is irrelevant, as longstanding Mississippi law holds that duress is not a legal defense to murder. *Watson v. State*, 212 Miss. 788, 793, 55 So. 2d 441, 443 (1951). Additionally, Johnson's defense that, although she and

8

Sanders were acting in concert, she really wished Sanders would have stopped is equally feeble given the evidence produced at trial. Neither defendant offered any testimony exculpating herself at the other's expense. Each testified as to her own guilt, as well as to the guilt of her co-defendant. The defendants have not shown the trial court abused its discretion based on the first *Duckworth* factor.

### B. *Balance of the evidence*

¶24. We must also evaluate whether the balance of the evidence goes more to the guilt of one defendant. Sanders does not specifically address this *Duckworth* factor, but Johnson heavily relies on it. Johnson points to the fact that Sanders was driving the car at the time of the crash. Johnson also notes that Sanders was the person operating the car in a reckless manner, traveling at high rates of speed, and disregarding traffic devices. As such, the balance of the evidence introduced at trial obviously points more to the guilt of Sanders than Johnson.

¶25. The defendants ignore crucial language in their indictment. Each of the three counts of the indictment states that Sanders and Johnson

> did wilfully, unlawfully, and feloniously without authority of law kill [the victims], while in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of [the victims], in that they, **while acting in concert with each other**, did drive at an excessive speed, did refuse to stop while being pursued by law enforcement officers, and did run through a stop light crashing into the car that [the victims] occupied, in violation of Mississippi Code, Annotated, Section 97-3-19(1)(b).

(Emphasis added).

¶26. The evidence introduced at trial clearly went equally to the guilt of both defendants. Testimony by the defendants and Dile established that the shoplifting spree originated with

9

Johnson, and all three women voluntarily participated because Sanders and Johnson needed the money. The women "hit" at least five stores during their trip using a specialized scheme in which each one played a crucial part. *See **Blanks v. State***, 451 So. 2d 775, 777 (Miss. 1984) (witness testified implicating both co-defendants, as well as himself, in the planning and commission of the crime; thus, there was no prejudice because the evidence introduced at trial went to the guilt of both defendants).

¶27. After getting caught at the Mussel Shoals Wal-Mart, Johnson drove the getaway car. Although Johnson told Sanders to drive the car after the three left their hiding spot, Sanders voluntarily agreed to get behind the wheel. When the high speed chase began, Sanders recklessly evaded police by running through stop signs, red lights, and stationary and rolling roadblocks. During this time, Johnson was consulting a road map. According to Dile's testimony, Johnson repeatedly yelled at Sanders to keep going and commented on the fact that both she and Sanders were on probation and would go to jail if caught with the stolen merchandise.

¶28. Although Sanders argues that Johnson had taken control of the car, this claim is refuted by Dile and the police officers in pursuit, who saw no struggle whatsoever in the fleeing vehicle. In fact, several witnesses testified to seeing Sanders smoking cigarettes while driving and Johnson chatting on her cell phone. Additionally, Sanders contradicted herself during her testimony, often acknowledging that she had control of the car during several parts of the chase. However, Johnson did admit to taking control of the vehicle in order to pass the semis driving side-by-side and blocking the lanes, thus prolonging the defendants' attempt at escape.

¶29. While Sanders was the driver during the high speed chase, the evidence introduced at trial demonstrated that Johnson at all times was working in concert with her to steal merchandise and escape the police. "Therefore, 'where all the evidence at trial went to the guilt of both appellants and not to one more than the other,' it is not error to try the defendants jointly." *Johnson v. State*, 512 So. 2d 1246, 1254 (Miss. 1987) (quoting *Blanks*, 451 So. 2d at 777). *See also* *Gossett v. State*, 660 So. 2d 1285, 1290 (Miss. 1995) ("The balance of the evidence demonstrated that both defendants separately shot Hunter implicating them equally in the murder.").

¶30. Given the breadth and depth of the evidence against each defendant, we cannot say the trial court abused its discretion in refusing to sever the trial. Significantly, even if this Court should find that each defendant had exculpated herself at the expense of the other, "[a]bsent a showing of prejudice, there are no grounds to hold that the trial court abused its discretion." *Hawkins*, 538 So. 2d at 1207. The evidence against both Sanders and Johnson was overwhelming. They were caught at the site of the crash with the stolen merchandise, and both made admissions of active participation in the crime. Separate trials would not have altered the outcome of this trial. *See* *King*, 857 So. 2d at 716 (without a showing of prejudice, there are no grounds upon which to hold the trial court in error).

## II. Failure of the trial court to sua sponte sever the case

¶31. Defendants also argue the trial court erred by not sua sponte ordering the trial to be severed. This assignment of error appears to be the defendants' fall-back position should this Court find that they did not pursue their motion to sever to decision as required by URCCC

11

2.04.[3]   Alternatively, the defendants might have made this argument out of concern for the potentially deficient record they provided to the Court.  *See Acker v. State*, 797 So. 2d 966, 971 (Miss. 2001) ("Our law is clear that an appellant must present to us a record sufficient to show the occurrence of the error he asserts and also that the matter was properly presented to the trial court and timely preserved.").   Regardless, this issue is meritless based on our discussion in Part I.   The defendants failed to demonstrate that the trial court abused its discretion by not severing their trial.   Therefore, the trial court cannot be put in error for failing to sua sponte sever the trial when it was not required to do so even upon a proper motion.

## CONCLUSION

¶32.   The defendants have not shown that they suffered prejudice as a result of the joint trial.  There is no evidence that the trial court abused its discretion in denying the defendants' motion to sever and motion for new trial.   Finally, the trial court was in no way required to sua sponte sever the trial.   Therefore, the trial court did not err in denying both motions.   We affirm the trial court's judgment.

---

[3] URCCC 2.04 states:

It is the duty of the movant, when a motion or pleading is filed, including motions for a new trial, to pursue said motion to hearing and decision by the court.  Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion; however, said motion may be heard after the commencement of trial in the discretion of the court.

¶33. **AS TO TORRI L. SANDERS: COUNT I: CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY TO COUNTS II AND III OF THIS CAUSE. COUNT II: CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY TO COUNTS I AND III. COUNT III: CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY TO COUNTS I AND II. AS TO SHERRY SUE JOHNSON: COUNT I: CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY TO COUNTS II AND III OF THIS CAUSE. COUNT II: CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY TO COUNTS I AND III. COUNT III: CONVICTION OF DEPRAVED HEART MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL RUN CONSECUTIVELY TO COUNTS I AND II.**

**SMITH, C.J., WALLER AND COBB, P.JJ., DIAZ, EASLEY, CARLSON, GRAVES AND RANDOLPH, JJ., CONCUR.**