BARNES, J.,
 

 for the Court.
 

 ¶ 1. A Coahoma County jury convicted Anthony Sneed, Anthony Smith, Thomas German, Jamario Brady, and Johnny Bick-ham of murder. The trial judge sentenced them each to life in the custody of the Mississippi Department of Corrections. The Defendants, each represented by separate counsel, now appeal raising several issues. Finding no error, we affirm their convictions and sentences.
 

 SUMMARY OF FACTS AND PROCEDURAL HISTORY
 

 ¶ 2. On the evening of August 11, 2006, law enforcement officer Kenneth Davis responded to a call in Friars Point, Mississippi about an assault at the Yates Street apartments. Arriving on the scene shortly thereafter, Officer Davis found Herman Fair lying on his back at the bottom of the apartments’ outdoor stairs with his head in a pool of blood, dead. Based upon interviews and his investigation of the incident, Sneed (a/k/a “Trigger”), Smith (a/k/a “Sticky”), German
 
 (a/k/a
 
 “Tommy C.”), Brady (a/k/a “Mario” or “Turtle”), and Bickham (collectively the “Defendants” or “Appellants”) were all apprehended as suspects.
 

 ¶ 3. Earlier that evening, Smith’s mother, Leanna Smith (a.k.a. “Baddy”), had
 
 *36
 
 called the Friars Point Police Department and filed a complaint about an altercation involving herself and Fair. Rotandria Foster, an eyewitness to that incident and Leanna’s niece, testified that she called Smith to tell him that she had seen Leanna and Fair “get into it” in front of a club earlier that day. Foster had seen Leanna choking Fair, but Fair did not “do anything” to Leanna. Smith wanted to talk to Fair about the altercation with his mother, but Leanna stated, “[l]eave it alone.” He didn’t. After Foster called Smith, she and another individual met the five Defendants, and they all walked toward Fair’s apartment and waited at the bottom of the stairs for Fair to emerge from his upstairs apartment. Fair, who had been drinking alcohol and smoking marijuana that day, came out of his apartment, yelled, “Where that b* ⅜ * * a* * ‘Baddy’ at?” and descended the staircase. Smith punched Fair under the chin, knocking him to the ground. Foster stated all of the Defendants kicked Fair one time. She further testified that when Brady started hitting Fair hard in the head with a three-iron golf club, Smith tried to stop him and told Brady that they were not trying to kill Fair, just hurt him. The beating lasted five to ten minutes. Foster did not see the victim rise from the ground again. She claimed she and four of the defendants ran from the scene, leaving Brady still beating Fair with the golf club. Soon after the altercation, Foster heard Brady brag to the other defendants, “Yeah, I killed the b* * * *. I tried to kill him. My name is ‘Turtle Squirtle.’ ” When the police arrived at Kededria Hampton’s apartment, where the Defendants and Foster were assembled, all of the Defendants ran out of the back door. The police officers took Hampton and Foster to city hall to be interviewed. Foster admitted that she did not “tell everything” in her first statement to police. After spending the night in jail, Foster claimed she told law enforcement what actually happened.
 

 ¶ 4. All of the Defendants waived their
 
 Miranda
 
 rights and gave statements to Officer Mario Magsby, a criminal investigator with the Coahoma County Sheriffs Department. Brady gave a statement to Officer Magsby on August 12 stating he merely kicked Fair, but in a statement on August 14, Brady admitted he also hit Fair on the leg with the golf club. Also on August 14, Brady led law enforcement to a soybean field approximately one-half mile from the murder scene where the golf club was recovered. Officer Magsby reported that Smith claimed Foster had called him about Fair’s assaulting his mother. When Smith received the phone call, he and Brady were at Bickham’s house and had been drinking. Smith admitted when Fair came down the stairs at the Yates Street apartments, he punched Fair in the chin and knocked him down. Smith did not admit to kicking Fair. According to Officer Magsby, Sneed, German, and Bickham all admitted in their statements that they each kicked Fair one time in the right side.
 

 ¶ 5. At the preliminary hearing, the charges against the Defendants were reduced from capital murder to murder, as there was no evidence of robbery. A Coa-homa County grand jury indicted the Defendants “individually, or while aiding and abetting and/or acting in concert with each other” for deliberate-design murder pursuant to Mississippi Code Annotated section 97-3-19(l)(a) (Rev.2006). Before trial, Sneed, Smith, and German each filed a motion to sever their trials from all other defendants, claiming they would be denied a fair trial if tried together. A hearing was held on the motions, which were all denied. The trial judge ordered that evidence of the statements of the respective defendants, and the statements themselves, would not be permitted during the
 
 *37
 
 State’s case-in-chief, and “if admissible, [they] may be used only after the defendant who gave the statement takes the stand, in order to assure his availability for cross-examination by the other defendants.” The trial court then amended its order, stating that the Defendants’ statements could be used in the State’s case-in-chief, but only after they were redacted to delete reference to other defendants. The order included a cautionary statement to the State that “no witness or defendants’ statement may be utilized that refers to or in any way infers that others were involved with the defendant giving the statement.”
 

 ¶ 6. A four-day trial ensued on February 20, 2007. The State called four witnesses: Foster, Officer Davis, Officer Magsby, and forensic pathology expert Dr. Steven Hayne. Officer Magsby testified for the prosecution as to what each defendant said in his statement, but the trial judge instructed the jury before each statement that it was only to consider the statement as evidence against the defendant who gave the statement, not as evidence against any other defendant. Additionally, the shoes the Defendants had been wearing at the time of the incident, which were all tennis shoes, were admitted into evidence during Officer Magsby’s direct examination. The Defendants’ written statements were not introduced into evidence.
 

 ¶ 7. Dr. Hayne, having performed the autopsy on Fair, testified that the victim had external acute injuries. There were several scalp injuries ranging up to two inches in length that Dr. Hayne attributed to blunt force trauma to the head, consistent with being struck with a golf club. However, Dr. Hayne opined that the scalp injuries did not cause Fair’s death, as there were no internal brain injuries. Instead, he determined the cause of death to be blunt force trauma to the chest, and the manner of death to be homicide. Externally, Fair had significant chest bruising. Internally, Fair had a broken rib and over three quarts of blood in his chest cavity. Dr. Hayne also found bruises on Fair’s lungs measuring nearly four inches in some areas. Most significantly, Dr. Hayne reported tears of the right lung up to two and one-half inches in length, which were the sites of bleeding into the chest cavity that caused Fair’s death. Dr. Hayne ascribed the origin of the lung lacerations to “external compression of the chest pushing down and tearing the lungs.” He stated the chest injuries could be attributed to someone’s kicking or stomping Fair in the chest. He testified that the injury could have been inflicted even if the assailant wore tennis shoes.
 

 ¶ 8. None of the Defendants elected to testify in his own defense. The only defendant to call a witness was Sneed, who called Sheila Croom to the stand. Croom lives at the apartments where the altercation occurred, next door to Loretta Smith, with whom Fair sometimes stayed. Croom testified she was with Fair all day on August 11; Fair and an individual by the name of Dennis Thompson had an argument earlier that day at a barbecue. That evening while at her apartment, Croom had called Loretta to let her know Leanna and Fair had had an argument, and heard Fair’s voice in the background. Later that evening, Croom heard a thump outside. She looked out of her window and saw Thompson crouched over Fair’s prostrate body at the bottom of the steps, searching through Fair’s pants’ pockets; however, she did not see what happened to Fair. After 911 was called and law enforcement arrived on the scene, Thompson denied any involvement in Fair’s death.
 

 ¶ 9. During trial, counsel for Brady moved for severance twice, but each re
 
 *38
 
 quest was denied.
 
 [1]
 
 At the close of evidence, Sneed, Smith, and German all renewed their motions to sever, which were denied. The jury received several instructions, including instructions for murder, aiding and abetting, and manslaughter. All of the Defendants were found guilty of murder and sentenced to life imprisonment. They each filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which were denied. The Defendants each timely appealed, raising several issues which we shall discuss in turn.
 

 ANALYSIS
 

 1. Severance (Brady, German, Smith, Sneed).
 

 ¶ 10. German, Smith, and Sneed filed separate pretrial motions to sever, which were denied. Brady’s counsel requested severance orally several times during trial; all of his requests were denied. Bickham never moved to sever. Accordingly, Brady, German, Smith, and Sneed all raise before this Court the propriety of the trial court’s denying their motions to sever.
 

 ¶ 11. The decision to grant or deny a severance lies within the sound discretion of the trial court for non-death penalty cases.
 
 Sanders v. State,
 
 942 So.2d 156, 158(¶ 10) (Miss.2006) (citing URCCC 9.03). Thus, we will reverse only for abuse of discretion.
 
 Id.
 
 The appropriateness and importance of joint trials has been recognized by the Mississippi and United States Supreme Courts: “[j]oint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling [a] more accurate assessment of relative culpability-advantages which sometimes operate to the defendant’s benefit.”
 
 Cavett v. State,
 
 717 So.2d 722, 727(¶ 30) (Miss.1998) (quoting
 
 Richardson v. Marsh,
 
 481 U.S. 200, 210, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Defendants who are “jointly indicted for a felony are not entitled to separate trials as a matter of right.”
 
 Sanders,
 
 942 So.2d at 158(¶ 11) (citing
 
 Price v. State,
 
 336 So.2d 1311, 1312 (Miss.1976)). When considering a motion to sever, the trial court must analyze the factors as set forth by the supreme court in
 
 Duckworth v. State,
 
 477 So.2d 935, 937 (Miss.1985). These factors include: (1) whether the testimony of one defendant tends to exculpate that defendant at the expense of the co-defendant, and (2) whether the evidence of guilt introduced at trial preponderates more heavily against one defendant than another.
 
 Sanders,
 
 942 So.2d at 159(¶ 15). “The overarching consideration when evaluating these factors is whether the defendants would be prejudiced by a joint trial.”
 
 Id.
 
 Unless prejudice can be shown, the trial court cannot be found to have abused its discretion.
 
 Id.
 
 at 158(¶ 12) (citing
 
 Hawkins v. State,
 
 538 So.2d 1204, 1207 (Miss.1989)).
 

 ¶ 12. Brady did not file a pretrial motion for severance, but he moved for severance several times throughout trial: during the State’s case-in-chief during the cross-examination of Foster, at the conclusion of the State’s case-in-chief, and after closing argument by Bickham’s counsel. On appeal, Brady argues that he could not receive a fair trial joined with the co-defendants because only one defendant probably inflicted the fatal blow to Fair.
 

 ¶ 13. German, Smith, and Sneed all make similar arguments on appeal. They argue that the evidence weighs more heavily against Brady than them. Because of their association with Brady in a joint trial, they claim prejudice because there was little evidence to convict them.
 
 *39
 
 German contends that this disparity could have been cured by jury instructions, but it was not. German, Smith, and Sneed also argue a joint trial prevented them from introducing exculpatory evidence that could have been introduced had they been tried separately. They claim it also prevented them from cross-examining the co-defendants regarding their statements, even though the trial court limited the use of the defendants’ statements only to information that did not implicate any other defendant. Sneed specifically complains he wanted to bring forward his co-defendants’ respective culpability to assist his defense. However, at the time the trial court made this ruling, no defendant objected to this precautionary measure preventing a Sixth Amendment Confrontation Clause problem.
 
 [2]
 

 ¶ 14. Regarding the first
 
 Duckworth
 
 factor, none of the Defendants testified at trial in his own defense; so one defendant’s testimony could not be used to exculpate him at the expense of a co-defendant. Therefore, the first
 
 Duckworth
 
 factor weighs in favor of a joint trial. Further, the trial judge was extremely cautious throughout the entire trial only to admit the portions of the Defendants’ statements to law enforcement during the State’s case-in-chief that included the specific defendant’s admission that he participated in the incident; no exculpatory information was introduced.
 
 [3]
 
 The Defendants cannot now complain that their defense was limited because they were prohibited from introducing exculpatory information from the other defendants’ statements, which would have certainly created a Confrontation Clause problem, when they all agreed upon these precautionary measures at the outset to avoid this very problem.
 

 ¶ 15. Furthermore,
 
 Sanders
 
 explains that joint trials which violate this factor often involve co-defendants with inconsistent defenses. In
 
 Payton v. State,
 
 785 So.2d 267, 269-70 (¶¶ 7-8) (Miss.1999), the supreme court did find that blame-shifting, rather than a defendant’s attempt to exculpate himself at his co-defendant’s expense, prejudiced the defendants and, thus, necessitated severance.
 
 Payton,
 
 however, involved defendants with completely inconsistent defenses. One defendant tried to shift as much blame as possible to the other defendant, who denied the allegations altogether.
 
 Id.
 

 ¶ 16.
 
 Payton
 
 is distinguishable. Here, none of the Defendants denied being involved in the beating. Additionally, the Defendants did not have a specific defense; they merely attempted, during cross-examination of the State’s witnesses, to shift more of the blame to Brady for the beating, while acknowledging that they participated in the beating. Only Sneed called a witness to the stand — Croom—who merely testified that she saw Thompson sifting through Fair’s pockets as he lay on the ground. The trial court properly recognized that because of Dr. Hayne’s medical testimony regarding Fair’s cause of death (kicks to the chest), blame could not be shifted solely to Brady because there was evidence all of the Defendants kicked Fair in the chest. Brady’s separate act of striking Fair with a golf club was found to have resulted only in non-fatal wounds.
 

 
 *40
 
 ¶ 17. The second
 
 Duckworth
 
 factor involves whether the balance of evidence involves one defendant over the others.
 
 Sanders,
 
 942 So.2d at 159(¶15) (citing
 
 Duckworth,
 
 477 So.2d at 937). Again, because Dr. Hayne’s testimony implicated all of the Defendants, not just Brady, as possibly having delivered the fatal injury to Fair, there is no imbalance in the evidence presented. Dr. Hayne did not attribute the blows to Fair’s chest to a golf club. Foster, the only eyewitness to the beating, could not identify where the Defendants kicked Fair, but she stated that all the Defendants kicked him. Further, Foster testified she only saw Brady hit Fair in the head area with the golf club, not in the chest. Brady, German, Smith, and Sneed failed to show that the balance of the evidence implicated one defendant over another.
 

 ¶ 18. In sum, neither
 
 Duckworth
 
 factor weighs in favor of a severance. There is no showing of prejudice by Brady, German, Smith, or Sneed; so the trial court did not abuse its discretion in denying their motions for severance.
 

 2. Sufficiency of the Evidence (Bick-ham, Brady, German).
 

 ¶ 19. Bickham, Brady, and German contest the sufficiency of the evidence presented by the State to convict them of murder.
 

 ¶ 20. A directed verdict, peremptory instruction, and motion for JNOV all challenge the sufficiency of the evidence presented to the jury.
 
 Hawthorne v. State,
 
 835 So.2d 14, 21 (¶ 31) (Miss.2003) (citing
 
 McClain v. State,
 
 625 So.2d 774, 778 (Miss.1993)). When reviewing the sufficiency of the evidence, “the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.”
 
 Bush v. State,
 
 895 So.2d 836, 843(¶ 16) (Miss.2005) (quoting
 
 Jackson v. Virginia,
 
 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Reversal can only occur when the facts point in favor of the defendant such that reasonable men could not have found, beyond a reasonable doubt, the defendant was guilty.
 
 Id.
 
 All credible evidence supporting the defendant’s guilt will be accepted as true.
 
 McClain,
 
 625 So.2d at 778.
 

 ¶ 21. Bickham argues that the evidence did not show he had the deliberate design to kill Fail' as required under section 97-3-19. He claims the jury was instructed improperly in that when jury instruction C-13, which defined “deliberate design,” was combined with jury instruction C-10,
 
 [4]
 
 it caused the jury to misinterpret the law. Bickham contends the evidence showed that he only lacked Fair one time in the side during the altercation; thus, he had no deliberate design to kill Fair. According to Bickham, this action equates with misdemeanor simple assault, a crime on which the jury was not instructed.
 

 ¶ 22. German also argues that the evidence showed he had no intent to kill Fair, only to hurt him. Further, he argues that Foster testified she only saw each defendant kick Fair once, but she testified Brady hit Fair with the golf club. German also contends that the jury convicted him on this alleged scant evidence because it was improperly instructed.
 

 ¶ 23. Brady specifically contends the testimonies of Foster and Dr. Hayne do not support his conviction of murder. He points out that Foster testified that he hit
 
 *41
 
 Fair in the head with a golf club, but only kicked Fair once. Because Dr. Hayne testified that the injuries to Fair’s head were not the cause of death, he claims his actions were not sufficient to support a conviction of murder.
 

 ¶ 24. In viewing the evidence in the light most favorable to the prosecution, we find ample evidence to convict all of the Defendants, including Bickham, Brady, and German, of murder. Deliberate-design murder is defined as “[t]he killing of a human being without the authority of law by any means or in any manner ... [wjhen done with deliberate design to effect the death of the person killed.... ” Miss.Code Ann. § 97-8-19(l)(a) (Rev.2006). The essential elements the prosecution is required to prove beyond a reasonable doubt are: “(1) the defendant killed the victim; (2) without authority of law; and (8) with deliberate design to effect his death.”
 
 Brown v. State,
 
 965 So.2d 1023, 1030(1127) (Miss.2007) (citing
 
 Dilworth v. State,
 
 909 So.2d 731, 736(¶ 18) (Miss.2005)). However, it is well established that “any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an ‘aider and abettor’ and is equally guilty with the principal offender.”
 
 Jones v. State,
 
 710 So.2d 870, 874(¶ 15) (Miss.1998) (quoting
 
 Hoops v. State,
 
 681 So.2d 521, 533-34 (Miss.1996)). Regarding aiding and abetting, this Court has stated:
 

 one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in the design of the felony.... [I]n order to be held criminally liable as an aider and abetter in the commission of a felony, one must “do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime.” And it has been further stated that “if two or more persons enter into a combination or confederation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of law, the act of all.”
 

 Scarborough v. State,
 
 956 So.2d 382, 386(¶ 21) (Miss.Ct.App.2007) (internal citations omitted).
 

 ¶25. Dr. Hayne testified that Fair’s cause of death was external compression to the chest, which was consistent with being kicked or stomped with great force. Since, according to the testimonies of Foster and Officer Magsby, there is evidence that each defendant kicked Fair (even if only one time), and each defendant was present at the time of the beating, there is sufficient evidence to prove each defendant could be guilty of aiding and abetting in the murder of Fair, even if his particular kick did not cause the fatal injury. Further, there is no evidence that any defendant attempted to stop any of the co-defendants from kicking Fair. While there were scalp injuries attributable to blunt force trauma to Fair’s head, which would be consistent with being struck with a golf club, Dr. Hayne testified these injuries did not cause Fair’s death. According to the evidence presented, it is not known which defendant actually inflicted the fatal blows to Fair’s chest, or if all of their kicks contributed to his death. Therefore, in order to find any of the five defendants guilty of Fair’s murder, the jury had to find that, beyond a reasonable doubt, one of the individual defendants actually committed the blow which killed Fair, and that the particular defendants aided, counseled, or encouraged another in the commission of Fair’s murder.
 

 ¶ 26. Regarding Bickham’s and German’s arguments on their alleged lack of intent to kill Fair, the supreme court has acknowledged “that ‘deliberate design’
 
 *42
 
 to take the life of another connotes intent to kill.”
 
 Jones v. State,
 
 710 So.2d 870, 878(¶31) (Miss.1998) (citing
 
 Peterson v. State,
 
 242 So.2d 420, 427 (Miss.1970)). However, “deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent.”
 
 Brown,
 
 965 So.2d at 1030(¶ 28) (quoting
 
 Gossett v. State,
 
 660 So.2d 1285, 1293 (Miss.1995)).
 

 ¶ 27. Further, this Court has affirmed murder convictions on the theory of aiding and abetting when the defendant did not even participate in the lethal beating, and did nothing to stop it. In
 
 McDowell v. State,
 
 984 So.2d 1003, 1008 (¶¶ 1-2) (Miss.Ct.App.2007), this Court affirmed the conviction of depraved-heart murder by two defendants, Eric McDowell and McDowell’s mother, Barbara Chapman, in the beating death of Marlon Davis, Chapman’s former boyfriend, whom she accused of domestic violence. Both defendants went to the front of the victim’s apartment; McDowell beat Davis with a stick and stomped him while Chapman stood over the victim.
 
 Id.
 
 at 1009(¶ 9). Davis died of blunt force trauma to the head and a lacerated liver.
 
 Id.
 
 at (¶ 11). Chapman admitted that she “put her son up to it,” but she did not intend for Davis to die.
 
 Id.
 
 at 1011(¶22). On appeal, Chapman argued that the State failed to prove she had the intent to kill Davis; however, this Court found the evidence was sufficient to support the jury’s verdict on the theory of aiding and abetting.
 
 Id.
 

 ¶ 28. Here, the following evidence establishes Bickham’s, Brady’s, and German’s intent to kill Fair. All of the Defendants joined together once Smith found out his mother had been in an altercation with Fair. The group went together to Fair’s apartment complex, and waited under a stairwell for Fair to emerge from his apartment. Then, Smith punched Fair in the face. Everyone in the group kicked Fair as he lay on the ground, and Brady additionally beat Fair with a golf club. The beating lasted five to ten minutes.
 

 ¶ 29. At trial, the Defendants tried to characterize their actions as merely light kicks, but the medical evidence shows otherwise. On appeal, Bickham, Brady, and German stress that the evidence shows they only kicked Fair once. However, the medical evidence shows multiple internal and external injuries that do not support this contention. Dr. Hayne testified to Fair’s numerous external injuries to his body, although not lethal, including the numerous lacerations to Fair’s scalp, bridge of the nose, and ear, in addition to contusions on his chest that were over six inches in length. The fatal internal injuries to Fair’s chest indicated he was beaten so severely as to break his rib, to lacerate his lungs, and to cause over three quarts of blood to hemorrhage into his chest cavity — certainly sufficient evidence of intent to kill by all five Defendants.
 

 ¶ 30. As far as Bickham’s contentions about an improperly instructed jury, we note that there were no objections from any of the Defendants when jury instruction C-10 and C-13 were granted. Accordingly, Bickham is procedurally barred from contesting these instructions for the first time on appeal.
 
 Smith v. State,
 
 989 So.2d 973, 986(¶ 48) (Miss.Ct.App.2008) (citing
 
 Harris v. State,
 
 861 So.2d 1003, 1013(¶ 18) (Miss.2003)).
 

 ¶ 31. Moreover, the jury was given the option of convicting the Defendants of manslaughter or murder, and it found evidence beyond a reasonable doubt to convict the Defendants of deliberate-design murder. “Whether a homicide is classified as a murder or manslaughter is ordinarily an inquiry to be made by the jury.”
 
 Hodge v. State,
 
 823 So.2d 1162, 1166(¶ 16) (Miss.2002) (citing
 
 Jackson v. State,
 
 740
 
 *43
 
 So.2d 832, 834(¶ 8) (Miss.1999)). We conclude the evidence, when viewed in the light most favorable to the prosecution, shows a rational fact-finder could have found the essential elements of deliberate-design murder beyond a reasonable doubt.
 

 3. Weight of the Evidence (Bickham, Brady, German, Smith, Sneed).
 
 [5]
 

 ¶ 32. Bickham, German, Smith, and Sneed argue that the jury’s verdict is against the overwhelming weight of the evidence, and the tidal court erred in denying their motions for a new trial.
 

 ¶ 33. This Court’s standard of review of a trial court’s denial of a motion for a new trial is an abuse of discretion.
 
 Johnson v. State,
 
 904 So.2d 162, 167(¶ 11) (Miss.2005). “When reviewing a denial of a motion for a new trial based on an objection to the weight of the evidence, we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.”
 
 Bush,
 
 895 So.2d at 844(¶ 18). The evidence is weighed in the light most favorable to the verdict.
 
 Id.
 
 All evidence “consistent with the defendant’s guilt is accepted as true together with any reasonable inferences that may be drawn from that evidence.”
 
 Young v. State,
 
 891 So.2d 813, 821(¶ 21) (Miss.2005) (citing
 
 Heidel v. State,
 
 587 So.2d 835, 838 (Miss.1991)). “Any factual disputes are properly resolved by the jury and do not mandate a new trial.”
 
 Moore v. State,
 
 859 So.2d 379, 385(¶ 26) (Miss.2003) (quoting
 
 McNeal v. State,
 
 617 So.2d 999, 1009 (Miss.1993)).
 

 ¶ 34. Bickham and German make the same argument as they did regarding the sufficiency of the evidence; they claim the evidence shows they did not have the intent to kill Fair. Smith and Sneed make this argument as well.
 
 [6]
 
 Bickham points out that the element of deliberate design to kill was “disproven” by Foster, because she testified all of the defendants, except Brady, ran away when Brady began hitting Fair with the golf club. Bickham, German, and Sneed insist the evidence shows they only kicked Fair once and fled.
 
 [7]
 
 Smith argues the evidence shows he only struck Fair, knocking him down, and kicked him once. Furthermore, Smith contends he asked Brady to stop hitting Fair with the golf club, claiming they only wanted to hurt, not kill, Fair.
 

 ¶ 35. Smith and Sneed argue they could only be convicted of murder through the theory of aiding and abetting their co-defendants. We note the jury was instructed on this theory; therefore, this well could have been the jury’s basis for their conviction of murder. Alternatively, Smith and Sneed argue the weight of the evidence supports a manslaughter conviction. Smith states he was enraged at Fair’s insults directed at his mother when Fair
 
 *44
 
 came out of the apartment yelling, “Where the b* * * * a* * ‘Baddy’ at?” Sneed agrees that Fair’s statement was grounds for provocation. However, as stated earlier, the jury was instructed on manslaughter and found the evidence weighed in favor of murder. We find no error in this regard.
 

 ¶ 36. Sneed contends Foster’s testimony is “uncontested.” We disagree; it is in direct conflict with Dr. Hayne’s medical testimony. Further, Foster could not remember where on Fair’s body the Defendants had kicked him. A conflict in the evidence creates a factual dispute which the jury resolves; it is not a ground for a new trial.
 
 Moore,
 
 859 So.2d at 385(¶ 26). As discussed regarding the sufficiency of the evidence, the medical evidence established an intent to kill for each defendant. Moreover, intent is typically a jury issue, which will not be disturbed by the reviewing court as long as the record supports the jury’s finding of fact.
 
 Boyd v. State,
 
 977 So.2d 329, 335-36(¶ 23) (Miss.2008). The jury obviously resolved any factual discrepancies against the Defendants, finding that the Defendants had the intent to kill Fair. After a careful review of the record, we are not persuaded that the jury verdict is contrary to the overwhelming weight of the evidence. This issue is without merit.
 

 4. Jury Instructions (German, Smith, Sneed).
 

 ¶ 37. German, Smith, and Sneed all raise issues regarding various jury instructions on aiding and abetting.
 
 [8]
 
 However, none of these jury instructions were objected to at trial by any of the Defendants’ trial counsel. Accordingly, German, Smith, and Sneed are procedurally barred from contesting these instructions for the first time on appeal.
 
 See Jones v. State,
 
 776 So.2d 643, 653(¶35) (Miss.2000) (failure to object to jury instructions at trial procedurally bars the issue from appeal). Procedural bar notwithstanding, we find that their arguments are without merit.
 

 ¶ 38. The contested jury instructions are as follows:
 

 Jury instruction C-10:
 

 The Court instructs the Jury that if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all and all are equally responsible for the acts of each in the commission of such felony.
 

 Jury instruction C-ll:
 

 The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person acting in concert with, or aiding and abetting, another person or persons in a joint effort or enterprise.
 

 If a defendant is acting in concert with or aiding and abetting another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such persons just as though the defendant had committed the acts or engaged in such conduct.
 

 Before any defendant may be held criminally responsible for the acts of others it is necessary that the defendant deliberately associate himself in some
 
 *45
 
 way with the crime and participate with the intent to bring about the crime.
 

 Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either acted in concert or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
 

 In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instruction[s] was committed by some person or persons, and that a defendant voluntarily participated in its commission with the intent to violate the law.
 

 Pertinent portion of jury instruction C-12:
 

 If you find from the evidence in this case beyond a reasonable doubt that: ... on or about August 11, 2007, Herman Fair, was a living human being, and ... the defendants ... individually or while aiding and abetting and/or acting in concert with each other, did unlawfully, willfully and feloniously and without authority of law and with deliberate design to effect death, kill and murder Herman Fair ... by beating and/or kicking him to death ... while the said [defendants] were not acting in self-defense or the defense of others, then you shall find the defendants ... guilty of murder.
 

 Jury instruction C-16:
 
 [9]
 

 The court instructs the jury that each person present at the time, and consenting to and encouraging the commission of a crime, and knowingly, willfully and feloniously doing any act which is an element of the crime, or immediately connected with it, or leading to its commission, is as much a principal as if he had with his own hand committed the whole offense. In this case the State has charged that these defendants aided and abetted one another in the commission of the crime charged. Aiding and abetting requires some participation in the criminal act and may be evidence by word, overt act or deed. In order to be found guilty as aiders and abettors of a crime, those Defendants charged as aiders and abetters must possess the same intent as the person principally committing the crime charged. If you believe from the evidence, beyond a reasonable doubt, that [all of] the defendants ... or any one of them, did willfully, knowingly, unlawfully and feloniously do any act which is an element of the crime of murder or manslaughter as you so find, immediately connected with such crime, or leading to its commission, and that such defendant or defendants shared the same intent as the person
 
 principally committing the crime,
 
 then and in that event you should find such defendant or defendants guilty of murder or manslaughter, as you so find.
 

 (Emphasis added.)
 

 ¶ 39. “When considering a challenge to a jury instruction on appeal, we do not review jury instructions in isolation; rather, we read them as a whole to determine if the jury was properly instructed.”
 
 Rubenstein v. State,
 
 941 So.2d 735, 784 (¶ 224) (Miss.2006). Reversible error will not be found if, when read together, the instructions correctly state the
 
 *46
 
 law and create no injustice.
 
 Id.
 
 “In other words, if the instructions taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results.”
 
 Milano v. State,
 
 790 So.2d 179, 184(¶ 14) (Miss.2001).
 

 ¶ 40. First, German argues that jury instruction C-12 improperly requires the jury to find all of the Defendants guilty of murder or all of the Defendants not guilty of murder. However, as the State points out, this jury instruction does not say this; it provides the elements of murder and states that if the Defendants “individually or while aiding and abetting and/or acting in concert with each other” beat or kicked Fair to death, they would be guilty of murder. Further, in making this argument, German does not consider the impact of the other jury instructions, thereby asking the Court to review instruction C-12 in isolation, which is improper. Other instructions that were given provide the jury must consider whether the State proved that some person, with whom a defendant voluntarily participated, committed every element of the crime charged — murder—or the lesser crime of manslaughter, and that to convict of murder, each defendant must have had the intent to bring about the crime. Since each defendant was charged with murder as either a principal or an aider/abetter, the jury was necessarily instructed that the acts of one may be found to be the acts of all.
 

 ¶ 41. Second, German also argues that the jury instructions do not make it clear that each defendant must have the required element of the intent to kill Fair. Specifically, he argues that instructions C-10, C-ll, and C-16 allow a defendant to be found guilty as an aider/abettor without sharing the requisite intent of the principal who committed the crime. We find no merit to German’s contention.
 

 ¶ 42. We find
 
 Milano
 
 instructive. There, the supreme court recognized the confusion generated by an aiding and abetting instruction which stated that the jury could find the defendant guilty if it believed “the evidence beyond a reasonable doubt” showed the defendant “did willfully, unlawfully and feloniously
 
 do any act ivhich is an element
 
 of (capital murder/kidnaping) with which he is charged.”
 
 Milano,
 
 790 So.2d at 184(¶ 16). The
 
 Mila-no
 
 court found that, while erroneous, the grant of that instruction was harmless error, because other instructions informed the jury of the State’s burden of proof: that it must prove each element of the crime beyond a reasonable doubt.
 
 Id.
 
 at 184-85 (¶¶ 17, 22). To avoid further confusion, the
 
 Milano
 
 court adopted the United States Fifth Circuit Court of Appeals’ model jury instruction, which is similar to jury instruction C-ll on aiding and abetting now before us.
 
 See id.
 
 at 185(¶ 21).
 

 ¶ 43. We do not find that jury instructions C — 10, C-ll, and C-16, when read with the other instructions, allow a defendant to be convicted as an aider/abettor without the same intent required as the principal. While instruction C-10 may be a general instruction, C-ll states the defendant must “participate with the intent to bring about the crime”; C-12 announces the specific intent of “deliberate design to effect death”; and C-16 clearly states that in order to be guilty as an aider and abettor of murder, that the defendant must “share ... the same intent” of the principal who committed the murder. Moreover, we note that other given instructions stress the State’s burden to prove every material element of the crime charged. Additionally, a separate instruction was given defining the “deliberate-design” intent element of the crime of murder.
 

 
 *47
 
 ¶ 44. Third, German and Smith complain that C-ll merely requires the defendant have the intent to violate “the law,” which is too ambiguous. We find this argument is without merit as well. Instruction C-ll refers to the “offense as defined by these instructions,” which would mean either murder or manslaughter. Additionally, this Court has specifically rejected German’s argument in
 
 Davis v. State,
 
 980 So.2d 951 (Miss.Ct.App.2007). There, the same language in an instruction was contested as “it did not confine the jury to a finding that [Josh] Davis intended to commit the specific crime of murder but rather if he intended to violate
 
 any
 
 law.”
 
 Id.
 
 at 957(¶ 12) (emphasis added). This Court rejected Davis’s argument, finding that the contested instruction was adopted in
 
 Mila-no
 
 and “intent to violate the law” language clearly referenced the charged crime when read together with the other instructions.
 
 Id.
 
 at 958(¶ 12).
 

 ¶ 45. Fourth, Smith and Sneed find fault with instruction C-16 pursuant to
 
 Berry v. State,
 
 728 So.2d 568 (Miss.1999). In
 
 Berry,
 
 an aiding and abetting instruction was found improper because it “appears to give the jury an additional option of finding the defendant guilty if she committed only one element of the crime without even finding that the crime was ever completed.”
 
 Id.
 
 at 571 (¶ 9). The court concluded that granting the instruction amounted to plain error “because the jury was not fully instructed on the elements of the crime.”
 
 Id.
 
 at 571 (¶ 6). Sneed makes the same argument: that the grant of jury instruction C-16 constitutes plain error; thus, he contends this Court is not precluded by the procedural bar from reviewing this issue.
 

 ¶ 46. We do not find the
 
 Berry
 
 issue present in the case before us. The instructions do not give the jury the option of convicting the defendant without first finding the crime has been committed. In fact, C-ll is taken almost verbatim from the Fifth Circuit’s model instruction adopted by the Mississippi Supreme Court in order to “cure future problems regarding this issue.”
 
 See Milano,
 
 790 So.2d at 185(¶ 21). Accordingly, Sneed’s plain-error argument is without merit.
 

 ¶ 47. In conclusion, we find the jury instructions, when read together, properly state the law and do not create an injustice.
 

 5. Officer Magsby’s Statement (Brady).
 

 ¶ 48. Brady argues that the trial court erred in overruling his objections to alleged hearsay testimony presented by the State’s witness, Officer Magsby, as to what Brady said in his statements to law enforcement about the incident. On the stand, Officer Magsby testified that Brady, in his first statement, admitted that he kicked Fair and, after the assault, ran to Hampton’s apartment. In his second statement two days later to Officer Mags-by, Brady gave a slightly different statement that he kicked Fair and also hit him on the leg with the golf club. Brady now claims this statement prejudiced him, as “the jury was allowed to consider this testimony as fact.”
 

 ¶ 49. This Court’s standard of review for the admission or exclusion of evidence is an abuse of discretion.
 
 Ladnier v. State,
 
 878 So.2d 926, 933(¶27) (Miss.2004). Reversal will not occur “unless the error adversely affects a substantial right of a party.”
 
 Id.
 
 (quoting
 
 Whitten v. Cox,
 
 799 So.2d 1, 13(¶ 27) (Miss.2000)). Hearsay is an out-of-court statement offered by a declarant to prove the truth of the matter asserted. M.R.E. 801(c). However, admissions by a party-opponent offered against that party at trial are not hearsay. M.R.E. 801(d)(2)(A). “Extrajudicial state-
 
 *48
 
 merits by a criminal defendant, so long as the statements are relevant to the matter being tried, are admissible in evidence.”
 
 Cobb v. State,
 
 734 So.2d 182, 185(117) (Miss.Ct.App.1999) (citing M.R.E. 801(d)(2)(A);
 
 Gayten v. State,
 
 595 So.2d 409, 414 (Miss.1992)). Here, Officer Mags-by’s testimony about Brady’s admissions was not hearsay.
 

 ¶ 50. Brady also argues that Officer Magsb/s statement unfairly prejudiced him. Certain evidence, while relevant, “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....” M.R.E. 403. We do not find the probative value of Officer Magsb/s testimony was outweighed by its prejudice. Therefore, the trial court did not err in overruling Brady’s objection to this testimony.
 

 6. Cumulative Error (Brady, German).
 

 ¶ 51. Brady and German argue that due to the cumulative ■ effect of the errors, their convictions should be reversed. However, neither defendant raised this argument before the trial court; therefore, they are proeedurally barred from raising this issue on appeal.
 
 See Gibson v. State,
 
 731 So.2d 1087, 1098(¶ 30) (Miss.1998).
 

 ¶ 52. Procedural bar notwithstanding, this issue is also without merit. Our supreme court has held: “Where there is no error in any one of the alleged assignment of errors, there can be no error cumulatively.”
 
 Hughes v. State,
 
 892 So.2d 203, 213(¶ 29) (Miss.2004) (citing
 
 Davis v. State,
 
 660 So.2d 1228, 1261 (Miss.1995)). Since Brady and German fail to show any individual errors, there can be no cumulative error.
 

 CONCLUSION
 

 ¶ 53. After a careful review of the trial court record and the arguments raised by each of the defendants, we find no issue justifying reversal. Therefore, we affirm the Defendants’ convictions and sentences.
 

 ¶ 54. THE JUDGMENT OF THE CIRCUIT COURT OF COAHOMA COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS FOR EACH APPELLANT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO APPELLANTS BICKHAM, BRADY, GERMAN, AND SMITH AND TO COA-HOMA COUNTY ON BEHALF OF APPELLANT SNEED.
 

 KING, C.J., LEE and MYERS, P.JJ., IRVING, GRIFFIS, ISHEE, ROBERTS, CARLTON and MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Brady also renewed his motion at the end of trial and after Bickham's closing argument.
 

 [2]
 

 . The Sixth Amendment to the United States Constitution states, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him....” U.S. Const, amend. VI.
 

 [3]
 

 . The Defendants’ written statements were not introduced; only Officer Magsby’s testimony about the statements was introduced.
 

 [4]
 

 . Juiy instruction C-10 states: “if two or more persons are engaged in the commission of a felony, then the acts of each in the commission of such felony are binding upon all and all are equally responsible for the acts of each.”
 

 [5]
 

 .While Brady mentions a “motion for a new trial,” which relates to the weight of the evidence, in the heading of his brief regarding the sufficiency of the evidence, he does not offer any legal authority or argument on the weight of the evidence. Appellate courts are under no duty to consider assignments of error when the appellant fails to make legal argument or cite authority in support of it.
 
 Walker
 
 v.
 
 State,
 
 823 So.2d 557, 563(¶ 13) (Miss.Ct.App.2002) (citing
 
 Drennan v. State,
 
 695 So.2d 581, 585-86 (Miss.1997)). Accordingly, while we have no duty to consider this issue for Brady, we do so through an exercise of our discretion.
 

 [6]
 

 . On appeal, Smith and Sneed did not contest the sufficiency of the evidence, only the weight of the evidence.
 

 [7]
 

 . Several of the defendants also state that the evidence before the jury shows they only kicked Fair lightly, in a "[g]et up. Come on. Let's fight” kind of kick; however, this phrase was actually Sneed’s defense counsel's words during the cross-examination of Foster.
 

 [8]
 

 . German contests jury instructions C-10, C-11, C-12, and C-16; Smith contests C-16 in conjunction with C-l 1, as does Sneed.
 

 [9]
 

 . While the defense attorneys did not object to this instruction at trial, the State did, arguing that once they produced evidence tending to show the defendant shared a “community of intent,” each specific defendant did not have to show intent. The trial judge overruled the State's objection.