GRIFFIS, P.J.,
for the Court:
¶ 1. Charlie D. Taylor appeals his convictions and sentences stemming from a shooting into a crowd on the porch of a home located in Jackson, Mississippi. Cordarel Brown was killed, and four other individuals were injured in the shooting. On appeal, Taylor asserts numerous assignments of error concerning jury instructions, voir dire, exclusion of evidence, and the circuit court’s reading of the indictment to the jury. We find no reversible error and affirm.
FACTS
¶ 2. On May 26, 2008, a group of people gathered on the porch of Phyllis Adams’s home located at 302 Manship Street in Jackson. Among the group were Taylor, Brown, Melvin Parker, Terrence Lampkin, Martez Samuel, and Alexis London. Parker testified that he and Lampkin began to horse around, and he accidentally knocked over Taylor’s cup of liquor. Taylor began to argue with Parker, but others in the group broke them up before a fight began. *101 Taylor then advised the group he was leaving, and they should be gone before he got back.[1] The group did not take Taylor’s threat seriously, and they remained on the porch.
¶ 3. The group later saw Taylor ride around the block in a car driven by Randy Johnson. After making the block, Johnson parked the car in front of Adams’s house. James Warren drove up behind Johnson’s car in a black jeep, which he also parked in front of the house. Lampkin was called over to Johnson’s car, and Lampkin and Taylor began to argue again. Lampkin turned away and walked back to the porch. Warren got out of his jeep and asked: “Who’s trying to jump on my little brother?” [2]
¶ 4. That is when Joe Bennett, who had been lying down in the back of Johnson’s car, got out of the car with a M-16 assault rifle. He walked to the back of the car where Warren was standing and said: “I’m sick of you ni* *ers.” Then he opened fire on the porch shooting Brown, Parker, Lampkin, England, and Samuel. Parker testified that when he was lying on the ground after he had been shot, he looked back up at Taylor. Taylor looked at him and said, “Yeah, ni* *er.” Then Taylor got back in the car with Bennett and Johnson and drove off. Brown died from gunshot wounds to his chest and neck.
¶ 5. Bennett, Johnson, Warren, and Taylor were indicted for one count of murder, four counts of aggravated assault, and one count of shooting into an occupied dwelling. The jury found Taylor guilty on all counts except for Count III, aggravated assault of Lampkin.[3] Taylor was sentenced to life for Brown’s murder, twenty years on each of the three convictions for aggravated assault, and ten years for shooting into an occupied dwelling, with all sentences ordered to run consecutively.
ANALYSIS

1. Jury Instructions

¶ 6. Taylor asserts that the circuit court improperly refused several of his proposed jury instructions and improperly granted several instructions proposed by the State. “Whether to give a jury instruction is within the sound discretion of the trial court.” Chamberlin v. State, 989 So.2d 320, 341-42 (¶ 80) (Miss.2008) (citation omitted). We review the jury instructions given as a whole to determine whether the refusal of a particular instruction was in error. Taylor v. State, 763 So.2d 913, 915 (¶ 8) (Miss.Ct.App.2000). If the instructions fairly state the law of the case and no injustice is created, no reversible error will be found. Id. “A defendant is entitled to have jury instructions given which present his theory of the case[;] however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.” Poole v. State, 826 So.2d 1222, 1230 (¶ 27) (Miss. 2002) (quoting Smith v. State, 802 So.2d 82, 88 (¶ 20) (Miss.2001)).
A Taylor’s Instruction on Aiding and Abetting
¶ 7. Taylor proposed Instruction D-16 regarding the intent required to be *102 found guilty as an aider or abettor, which states:
For you to find Charlie Taylor guilty of any of the crimes for which he is charged, you must find beyond a reasonable doubt that he shared the same intent as the person principally committing the crime charged.
The State objected on the grounds that this was an improper statement of the law and that the issue was covered elsewhere in the instructions. The circuit court agreed and refused the instruction.
¶ 8. On appeal, Taylor cites Sneed v. State, 31 So.3d 33 (Miss.Ct.App.2009) for the proposition that the refusal of Instruction D-16 was error. However, in Sneed, we addressed the question of whether it was reversible error for the circuit court to grant an instruction similar to D-16.
¶ 9. Instruction C-16 in Sneed included this language: “In order to be found guilty as aiders and abettors of a crime, those Defendants charged as aiders and abett[o]rs must possess the same intent as the person principally committing the crime charged.” Id. at 45 (¶ 38). There, the defendants attacked this and other instructions and claimed that there was confusion as to what intent was required for the jury to convict them as aiders or abettors. Id. at 46 (¶ 43). This Court held that the jury was properly given an instruction on aiding and abetting as set forth in Milano v. State, 790 So.2d 179 (Miss.2001); thus, there was no reversible error in granting Instruction C-16 because the instructions, as a whole, provided a proper statement of the law. Sneed, 31 So.3d at 47 (¶ 47).
1110. In Milano, the supreme court adopted the United States Fifth Circuit Court of Appeals’ model jury instruction to “avoid any further confusion” on this issue. Id. at 185 (¶ 21). That model instruction, which we relied upon in Sneed, was given verbatim in the instant case as Instruction S-12. The Milano instruction states:
The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.
Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond a reasonable doubt that the defendant was a participant and not merely a knowing spectator.
In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commission with the intent to violate the law.
*103 Milano, 790 So.2d at 185 (¶ 21) (emphasis added).
¶ 11. The Milano instruction, Instruction S-12, properly instructed the jury as to the intent required to convict Taylor as an aider or abettor under the current law; therefore, the circuit judge did not abuse his discretion in denying Instruction D-16. Additionally, the elements instructions required the jury to find that Taylor, “acting as an aider or abettor,” intentionally committed the acts charged before they could return guilty verdicts. The intent required to convict Taylor as an aider or abettor was sufficiently covered in the jury instructions. This issue has no merit.

B. Taylor’s Instruction on Deliberate Design

¶ 12. Taylor’s proposed Instruction D-18 defining deliberate design stated:
In the other instructions I have given you, the words “deliberate design” are included. “Deliberate” indicates full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences. “Design” means to calculate, plan, and contemplate. “Deliberate design” means to intent [sic] to kill, without authority of law, and not being legally justifiable or legally excusable.
The State objected on the grounds that deliberate design had already been defined elsewhere in the instructions. The circuit court held that Instruction S-8 properly instructed the jury on this issue; therefore, Instruction D-18 was refused.
¶ 13. Instruction S-8 states:
The court instructs the jury that “deliberate design” cannot be formed at the very moment of the fatal aet[;] however, the deliberate design need not exist in the mind of the Defendant for any definite time, not for days, hours[,] or even minutes, but if there is deliberate design, and it exists in the mind of the Defendant but for an instant before the fatal act, this is sufficient deliberate design to constitute the offense of Murder.
On appeal, Taylor contends that Instruction S-8 does not define “deliberate design”; instead, it merely instructs the jury as to when the intent may be formed. The State responds that this same argument was rejected by the supreme court in Catchings v. State, 684 So.2d 591, 599 (Miss.1996).
¶ 14. Vernon Ray Catchings submitted a proposed jury instruction, similar to Taylor’s Instruction D-18, which defined the words “deliberate” and “design.” Id. The supreme court held that because the elements of murder had been sufficiently covered elsewhere in the instructions, Catchings was not entitled to an instruction further defining deliberate design. Id.
¶ 15. Here, the jury was given Instruction S-9, which was almost identical to the instruction given in Catchings. See id. at 598. Instruction S-9 states:
The court instructs the jury that murder is the killing of a human being, with malice aforethought, not in necessary self defense, and without the authority of law, by any means or by any manner, when done with deliberate design to effect the death of the person killed or when done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without premeditated design to effect the death of any particular individual.
¶ 16. Based on the supreme court’s ruling in Catchings, the jury here was properly instructed as to the elements of murder in the instructions as a whole. Accordingly, the circuit judge did not abuse his discretion in refusing Instruction D-18. This issue has no merit.

*104
C. The State’s Instruction on Aiding and Abetting

¶ 17. The circuit court granted the State’s Instruction S-7C concerning aiding and abetting, which states:
The Court instructs the jury that one who aids and abets necessarily enters into an agreement that an unlawful act will be done. He participates in design of felony, [sic] In order to be held criminally liable as an aider and abettor in the commission of a felony, one must do something that will incite, encourage, or assist the actual perpetrator in the commission of the crime. If two or more persons enter into a combination or confederation to accomplish some unlawful object, any act done by any of the participants in pursuance of the original plan and with reference to the common object is, in contemplation of the law, the act of all.
¶ 18. Taylor claims that this instruction should not have been granted because it was confusing and repetitive. He argues that it is repetitive because the circuit court also gave the Milano instruction as Instruction S-12 regarding aiding and abetting. He also says the two instructions are confusing when read together.
¶ 19. It is well established that “proposed instructions should generally be granted if they are correct statements of law, are supported by the evidence, and are not repetitious.” Flowers v. State, 51 So.3d 911, 912-13 (¶ 6) (Miss.2010) (quotations omitted). Here, Taylor argues conversely that if two instructions given at trial are repetitious, the repetitious instructions are grounds for reversible error. That is not the case. In Wall v. State, 413 So.2d 1014, 1015 (Miss.1982), the supreme court held that while repetitious instructions were discouraged, such instructions did not constitute reversible error where they were not misleading to the jury.
¶ 20. Here, it is arguable that Instructions S-7C and S-12 are repetitive. They both discuss the actions of one who aids or abets another to commit a crime. However, we find no reason to assume that the two instructions were misleading to the jury. The only confusion asserted by Taylor is that Instruction S-7C does not require that the aider or abettor have the same intent as the person who principally committed the crime. This contention reverts back to his argument under issue 1A in which he claims that the circuit court was required to give the instruction given in Sneed. As discussed above, we find no merit to that argument.
¶ 21. There is no contention that either Instruction S-7C or S-12 is a misstatement of the law. To the extent that the instructions are repetitious, they should not have been given. Yet because we find no reason that the jury would have been misled by the repetition, we find that any error was harmless.

D. The State’s Instruction on Flight

¶ 22. Taylor claims that the circuit court should not have granted Instruction S-10, a flight instruction, which states:
The Court instructs the Jury that flight is a circumstance from which in the absence of a reasonable explanation therefor, guilty knowledge and fear may be inferred. If you find from the evidence in this case, beyond a reasonable doubt that the defendant, Charlie Taylor did flee after acting as an accessory before the fact in the killing of Cordarel Brown and shooting of Alexis [London], Melvin Parker, Martez Samuel, Terrence Lampkin and shooting into the home of Phyllis Adams, then the flight of Charlie Taylor is to be considered in connection with all other evidence in this case. You will determine from all the facts whether the flight was from a conscious sense of *105 guilt or whether it was caused by other things, and give it such weight as you think it is entitled to in determining the guilt or innocence of Charlie Taylor.
Even though he did not testify, Taylor argues there is an obvious logical explanation why he fled the scene. Alternatively, he claims that the probative value of evidence of his flight is outweighed by the danger of unfair prejudice.
¶ 23. In Shaw v. State, 915 So.2d 442, 447 (¶ 18) (Miss.2005), the supreme court considered a similar instruction, stating:
We have consistently held that a defendant’s flight is admissible as evidence of consciousness of guilt. However, a flight instruction is appropriate only where the flight is unexplained and somehow probative of guilt or guilty knowledge. Therefore, evidence of flight is inadmissible where there is an independent reason for the flight. Also, it is well settled that evidence of flight or escape is admissible as an exception to [Mississippi Rule of Evidence] 404(b) in order to show guilty knowledge. While evidence of flight is admissible under Rule 404(b), it must be filtered through [Mississippi Rule of Evidence] 403.
Id. (citations omitted). The supreme court held: “In determining whether to admit evidence of flight under Rule 403, the trial court is afforded great discretion.” Id.
¶ 24. In his brief, Taylor states that the obvious reasons for his flight were that: Lampkin had a gun; Brown had been seen with a gun; and it was possible that someone else had access to an SKS rifle. But none of these assertions are supported by the evidence presented at trial. Taylor chose not to testify in his defense. Despite defense counsel’s best efforts, he was unable to illicit this testimony from any of the State’s witnesses. There was no testimony that Lampkin or Brown had a gun. Samuel, like all the other witnesses, testified that Lampkin did not have a gun. On cross-examination, the State stipulated that Samuel had given a statement to the police in which he said that Lampkin had shot a gun into the air earlier that day. Yet that fact was used only as impeachment evidence against Samuel and not as substantive evidence that Lampkin did, indeed, have a gun earlier in the day. Regardless, there was never any testimony, impeachment or otherwise, that showed Lampkin had a gun at the time he and the others were shot.
¶ 25. There was testimony that the police discovered an SKS rifle under an abandoned house in the lot adjacent to Adams’s home. But, again, there is no evidence that it was used by anyone involved in this case.
¶ 26. Taylor cites Tran v. State, 681 So.2d 514, 519 (Miss.1996), where the supreme court held that a flight instruction was not proper where the defendant makes a claim of self-defense. However, Taylor has made no claim of self-defense, and the supreme court’s holding in Tran does not apply. Instead, Taylor’s argument is more analogous to the holding in Brock v. State, 530 So.2d 146 (Miss.1988).
¶ 27. There, Leonardo Brock fled from authorities after a woman alleged that he was the man who had raped and shot her. Id. at 153. On appeal, he argued that the jury should not have been instructed on his flight because he had given an explanation as to why he fled. Id. The supreme court held that the instruction was proper because Brock’s version of events was “contradicted and ha[d] no support outside his own testimony.” Id.
¶ 28. Similarly, here, Taylor’s version of the reasons for his flight are not supported by the record. In fact, Taylor’s argument is much weaker than Brock’s because Tay *106 lor failed to present any evidence of his version of the story. Because there is no evidence to support the assertions made in Taylor’s brief, we find that his flight was unexplained.
¶ 29. Taylor also contends that the probative value of his flight is outweighed by its prejudicial effect in violation of Rule 403 of the Mississippi Rules of Evidence. We disagree. The circuit judge found that the evidence that Taylor had fled in the vehicle with Bennett immediately after the shooting was highly probative of Taylor’s guilty knowledge. We give the circuit judge great deference in conducting this balancing test, and we find no abuse of discretion on his part. Because Taylor’s flight was unexplained and the evidence of his flight was weighed by the circuit judge under Rule 403, we find no error in granting the flight instruction. Accordingly, this issue has no merit.

E. Taylor’s Instruction on Circumstantial Evidence

¶ 30. Taylor proposed Instruction D-14, which states:
This case is one of circumstantial evidence. For you to find Charlie Taylor guilty of any of the counts for which he is charged, you must find him guilty not only beyond a reasonable doubt, but also to the exclusion of every reasonable hypothesis consistent with innocence.
He argues this instruction on circumstantial evidence should have been given because there was no eyewitness testimony that he fired shots or aided or abetted the person who fired the shots. The State argues that the eyewitness testimony that Taylor had threatened to shoot up the house and then returned with Bennett, who did shoot at the house, was sufficient direct evidence such that an instruction on circumstantial evidence was not required.
¶ 31. The supreme court recently discussed this issue, stating:
Where all the evidence tending to prove the guilt of the defendant is circumstantial, the trial court must grant a jury instruction that every reasonable hypothesis other than that of guilt must be excluded in order to convict. Manning v. State, 735 So.2d 323, 338 (Miss.1999) (quoting Givens v. State, 618 So.2d 1313, 1318 (Miss.1993)). Circumstantial evidence is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such a fact does exist. Alexander v. State, 749 So.2d 1031, 1036 (Miss.1999) (quoting Keys v. State, 478 So.2d 266, 268 (Miss.1985)). While evidence does not always fall neatly into one category, examples of direct evidence include an admission or confession by the defendant to a significant element of the offense, or eyewitness testimony to the gravamen of the offense charged. Mack v. State, 481 So.2d 793, 795 (Miss.1985) (citations omitted).
Kirkwood v. State, 52 So.3d 1184, 1186-87 (¶ 10) (Miss.2011). Importantly, “[eyewitness testimony constitutes direct evidence, and when the State presents direct evidence against a criminal defendant, a circumstantial-evidence instruction is not warranted.” Trammell v. State, 62 So.3d 424, 430 (¶ 26) (Miss.Ct.App.2011) (citations omitted).
¶ 32. Here, numerous eyewitnesses testified that Bennett was the one who fired the gun. Also, there was ample testimony that the witnesses saw Taylor become angry over his spilled drink. He then threatened that they should be gone when he got back, and one witness testified that Taylor said we was going to shoot the corner up. There was eyewitness testimony that Taylor later returned with Bennett *107 who got out of the ear and started shooting. Parker testified that after Parker had been shot Taylor said, ‘Yeah, ni* *er,” indicating his involvement in the shooting.
¶ 33. The State was required to prove that Taylor, acting as an aider or abettor: (1) did purposely, knowingly, and felo-niously kill Brown with deliberate design or while in the commission of an act eminently dangerous to others, evincing a depraved heart, without the authority of the law; (2) did purposefully or knowingly cause or attempt to cause bodily injury to Parker, England, and Samuel; and (3) did willfully and unlawfully shoot or discharge a firearm into a dwelling usually occupied by persons.
¶ 34. As we discussed above, the Milano instruction requires that an aider or abettor is responsible for the acts of another when he “joins another person and performs acts with the intent to commit a crime.” The State must prove that “the accused deliberately associate^] himself in some way with the crime and participate in it with the intent to bring about the crime.” There was ample eyewitness testimony that Bennett committed each element of the crimes charged. And there was also ample eyewitness testimony that Taylor had the intent to bring about such crimes. Witnesses heard Taylor threaten to shoot at the house; they saw Taylor return with Bennett; Taylor then stood and watched the shooting saying, ‘Yeah, ni* *er,” to Parker before Taylor got in the car and drove off with Bennett. Such testimony was direct evidence of Taylor’s intent to commit the crimes charged.
¶ 35. The circuit judge found that there was direct evidence of an important element of each charge. We find that the circuit judge did not abuse his discretion in making such ruling; therefore, this issue has no merit.

2. Voir Dire

A. The State’s Challenges for Cause

¶36. Taylor asserts that the circuit court improperly granted the State’s challenge for cause on two members of the venire. A potential juror is properly removed for cause where “cause for challenge exists that would likely affect his competency or impartiality at trial.” Ross v. State, 16 So.3d 47, 54 (¶ 10) (Miss.Ct.App.2009). This court has held that “a circuit judge has wide discretion in determining whether to excuse any prospective juror, including one challenged for cause.” Smith v. State, 989 So.2d 973, 983-84 (¶ 36) (Miss.Ct.App.2008). We have stated that the trial court has “complete discretion” to remove any juror that the trial court is convinced is not able to try the case without any bias or prejudice toward the State or the defendant. Langston v. State, 791 So.2d 273, 281 (¶ 17) (Miss.Ct.App.2001). An appellate court may not reverse a decision by a trial court regarding jury selection unless there is an abuse of discretion. Williams v. State, 61 So.3d 981, 984 (¶ 14) (Miss.Ct.App.2011).
¶ 37. Taylor contends that the circuit court improperly struck Mason Pennaman whom the State challenged for cause because of Pennaman’s concern for his job. Pennaman is in his first year working for the fire department and works twenty-four hour shifts. He was concerned that the fire department would not allow him to miss work because he was in a probationary period.
¶ 38. Taylor argues that there was no issue concerning Pennaman’s ability to be fair, impartial, or competent. Instead Taylor claims that the State challenged Pennaman for his fear of losing his job. In his brief, Taylor argues that many prospective jurors are concerned about the *108 effect that jury duty may have on their employment, but Taylor claims such concern is an insufficient reason for being removed for cause.
¶ 39. The State responds that it ultimately challenged Pennaman for cause since he “seemed to be up in the air about his job situation with the fire department and he said he’s on a year’s probation and he can’t miss work.” The State agreed with defense counsel that it seemed “bizarre that a juror would actually be fired for serving on a jury, but the prosecutor stated that he did not want a ‘distracted juror.’ ”
¶40. The trial court agreed with the State and accepted the State’s challenge for cause, making the following specific findings:
So we don’t know at this time whether he would be excused, but he is on probation with — with the employer. In this economy you certainly don’t want to lose your job. The — but the Court’s concerned he would be — he would be distracted. That’s the biggest concern. He’d be fearful of — of his job. The Court’s concerned that he wouldn’t give the defendant or the State fair consideration under the circumstances.
¶ 41. Taylor also contends that the circuit court improperly granted the State’s challenge for cause on Linda Boy-kins. Taylor argues that nothing said by Boykins during voir dire showed she could not be fair and impartial.
¶ 42. The State challenged Boykins for cause because of her relationship with Taylor’s family. Boykins told the court that she had known Taylor’s mother and sister for twenty years and that she knew the family well. Boykins also dated the father of one of Taylor’s sisters. Boykins had known Taylor’s sister for about twelve years.
¶ 43. Boykins also informed the circuit court that she had just held a conversation with Taylor’s mother regarding Taylor while she was outside the courtroom during a break in jury selection. Taylor’s mother informed Boykins that her son was the defendant.
¶ 44. The circuit court was concerned with the fact that a potential juror would discuss the matter when all prospective jurors had been specifically advised not to do so. While the circuit court noted that Boykins did not actually discuss the case, she was a prospective juror who “talked with the mother of this defendant just outside the courtroom.”
¶ 45. Mississippi Code Annotated section 13-5-79 (Rev.2002) provides that “[a]ny person who will make oath that he [or she] is impartial shall be competent as a juror in any criminal case. Any juror shall be excluded, however, if the court be of the opinion that he [or she] cannot try the case impartially, and the exclusion shall not be assignable as error.” The supreme court has interpreted this statute literally, holding that “once the judge [has] exercised his discretion and determined that the jurors probably could not be impartial, then the determination may not be assigned on appeal as an error[.]” Coverson v. State, 617 So.2d 642, 646 (Miss. 1993). Thus, this assignment of error is procedurally barred.
¶ 46. There is an important and long standing maxim stated by the supreme court that “a defendant does not have a vested right to any particular juror but only the right to be tried by a fair and impartial jury.” Smith v. State, 724 So.2d 280, 328 (¶ 193) (Miss.1998) (citing Johnson v. State, 631 So.2d 185, 191 (Miss. 1994)). The defendant cannot complain of the exclusion of a particular juror if the end result is a jury composed of fair and *109 impartial jurors. Coverson, 617 So.2d at 646. The circuit court is responsible for ensuring that a competent, fair, and impartial jury is empaneled. Neal v. State, 15 So.3d 388, 398 (¶ 20) (Miss.2009). A defendant must present evidence to show that the jury was not fair and impartial, and thus prejudice resulted on the part of the defendant. Manning v. State, 735 So.2d 323, 336 (¶ 19) (Miss.1999).
¶ 47. Taylor does not argue that the jury was not fair or impartial. He merely argues that the determination by the circuit court that the two members of the venire should be struck is error. We find that it was not an abuse of discretion by the circuit court judge to strike Pennaman because of distraction or Boykins because of her conversation with Taylor’s mother during the jury selection proceedings. Therefore, we find this issue is both procedurally barred and without merit.

B. Limitation on Taylor’s Voir Dire

¶ 48. Taylor asserts that the circuit court improperly limited his voir dire by prohibiting him from asking the venire if they would be pressured to go home once they were in deliberations. Upon the State’s objection, Taylor proffered that he would have asked the venire:
Whether or not they would change their vote just because they did-were in the minority or change their vote for the purpose of going home.
¶ 49. Taylor also argues that the circuit court improperly sustained the State’s objection to Taylor’s asking the venire if they favored the prosecution or Taylor. Taylor asserts that it was critical to his case that he know if a potential juror might change their vote so as to not be in the minority and that he was entitled to know if a prospective juror had a problem that would cause them to change their vote after jury instructions and deliberations.
¶ 50. The State contends that the circuit court repeatedly stressed during voir dire that the jurors must be fair and impartial and that upon being seated, the jury was instructed to base their decision only on the evidence presented. The State further asserts that Taylor has failed to show any clear prejudice caused by the limited voir dire; thus, his assignment of error necessarily fails. The State relies on Moffett v. State, 49 So.3d 1073, 1089 (¶ 45) (Miss.2010) (quoting Jackson v. State, 791 So.2d 830, 835-36 (¶21) (Miss.2001)), in which the supreme court held:
The standard of review in examining the conduct of voir dire is abuse of discretion. Abuse of discretion will only be found where a defendant shows clear prejudice resulting from undue lack of constraint on the prosecution or undue constraint of the defense.
1151. In his brief, Taylor admits an abuse-of-discretion standard is to be applied to determine whether the trial court improperly limited voir dire, and a defendant must show that he was clearly prejudiced by undue constraint on his voir dire. Ross v. State, 954 So.2d 968, 988 (¶ 31) (Miss.2007). Yet he does not attempt to persuade this Court that he was prejudiced by the circuit court’s limitation.
¶ 52. Instead, Taylor contends, relying on Evans v. State, 725 So.2d 613 (Miss. 1997), that further voir dire was required to explore any prejudices of prospective jurors and to determine matters directly related to the case. He cites Evans for the proposition that while trial courts have a responsibility to control voir dire, the trial court must not hinder a full exploration of a juror’s predispositions by hypothetical questioning or otherwise. Id. at 650 (¶ 119).
¶ 53. Taylor’s argument is merely an attempt to avoid the fact that he has failed to show any prejudice created *110 by the circuit court’s limitation. The supreme court has stated that “a voir dire is presumed sufficient to ensure a fair and impartial jury. To overcome this presumption, a party must present evidence indicating that the jury was not fair and impartial and show that prejudice resulted from the circuit court’s handling of the voir dire.” Ross, 954 So.2d at 988 (¶ 31). Mississippi law allows attorneys for each party to probe the prejudices of prospective jurors so that all will have an understanding of the juror’s thoughts on matters directly related to those being tried. Evans, 725 So.2d at 650 (¶ 121) (quoting West v. State, 558 So.2d 8, 22 (Miss.1989)). However, the determination of whether a question is proper or improper is not always easily made. Thus, it is a process where the trial judge must be afforded considerable discretion. Simon v. State, 688 So.2d 791, 799 (Miss.1997). Even the United States Supreme Court has stated:
Despite its importance, the adequacy of voir dire is not easily subject to appellate review. The trial judge’s function at this point in the trial is not unlike that of the jurors later on in the trial. Both must reach conclusions as to impartiality and credibility by relying on their own evaluations of demeanor evidence and of responses to questions.
Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 68 L.Ed.2d 22 (1981).
¶ 54. Taylor fails to assert that the jury impaneled at his trial was unfair, prejudiced, or biased against him or that he received an unfair trial. Taylor also fails to claim that he was prejudiced by the limitation imposed on his voir dire by the circuit court. Since Taylor does not assert such, we find this claim is without merit.

3. Evidence of Other Guns

¶ 55. Taylor argues that the circuit judge improperly refused to admit evidence that a pistol had been found in Adams’s home and that an SKS rifle had been found under an abandoned house next door. The State responds that the circuit judge was correct to exclude this evidence as irrelevant because Taylor failed to link either weapon to the shooting for which he was charged.
¶ 56. Adams’s daughter, Philetta, testified that Adams had found a pistol near the bedroom door of her home. Philetta told the police that she assumed it must have been Brown’s because it was found in the same area as Brown’s body. When Taylor’s counsel attempted to cross-examine Adams about the pistol, the State objected claiming that the pistol was irrelevant because Taylor had made no attempt to connect the pistol to the shooting. The circuit judge agreed and sustained the State’s objection.
¶ 57. Taylor’s counsel made a proffer that Adams would testify that she found the pistol in her home after the shooting and that she had seen Brown with the pistol at some other unspecified time.[4] Taylor claims that the pistol was relevant because the State did not prove the exact type of weapon that was used to shoot Brown and the other assault victims; therefore, he contends that the pistol found by Adams could have caused the injuries to the aggravated-assault victims and the bullet holes in the house.
¶ 58. “The admission of relevant evidence is left largely to the discretion of the trial judge.” Jackson v. State, 924 So.2d 531, 546 (¶ 54) (Miss.Ct.App.2005). *111 Relevant evidence is defined as “evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” M.R.E. 401.
¶ 59. Here, the jury had already heard through Philetta’s testimony that a pistol was discovered in the home and that Phi-letta assumed it belonged to Brown. The only testimony excluded was that Adams had seen Brown with the pistol at some other time. None of the eyewitnesses testified that Brown had a gun or shot a gun that day. The fact that Adams might have seen Brown with the gun at another time was not relevant to the shooting at issue here. Taylor was unable to link the pistol to the crimes for which he was charged. The circuit judge did not abuse his discretion in excluding this evidence as irrelevant.
¶ 60. Taylor also contends that the circuit judge improperly excluded evidence concerning the SKS rifle found underneath the abandoned house next to Adams’s house. The circuit judge did not allow Taylor’s counsel to question Detective Christopher Watkins about the rifle. Taylor’s counsel proffered that Detective Watkins would testify that the rifle was found under the abandoned house the day after the shooting. However, Officer Robert Bufkin had already testified to that information about the rifle.
¶ 61. The State’s expert from the crime lab testified that the rifle could not have fired the type of rounds that were recovered from the crime scene. The circuit judge found that evidence of the rifle was irrelevant because Taylor had failed to connect it to the shooting.
¶ 62. When Taylor attempted to enter the pistol and the rifle into evidence for the jury to examine, the circuit judge restated his holding that neither gun was relevant because neither gun had been linked to the shooting in any way. The circuit judge further found that even if the guns were relevant, presenting the guns to the jury would be more prejudicial than probative under Rule 403 of the Mississippi Rules of Evidence.
¶ 63. We find that the circuit judge did not abuse his discretion by excluding certain evidence about the pistol and rifle. Accordingly, this issue has no merit.
A Reading the Indictment to the Jury
¶ 64. Taylor argues that the circuit court erred when it allowed the indictment to be read to the venire and when it instructed the venire on the grand-jury process. Specifically, Taylor contends that these actions violated his right to due process guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article 3, Section 14 of the Mississippi Constitution, which also guarantees the right to a fair and impartial jury.
¶ 65. While Taylor asserts a general claim of a violation of his due-process rights, he cites no legal authority in support thereof. The supreme court stated in Carter v. Mississippi Department of Corrections, 860 So.2d 1187, 1193 (¶ 17) (Miss. 2003): “Failure to cite legal authority in support of an issue is a procedural bar on appeal.” The supreme court has further stated that it is the duty of the appellant to “provide authority in support of an assignment of error.” Kelly v. State, 553 So.2d 517, 521 (Miss.1989). If such support is not provided, then the Court is under no duty to consider the claim. Id. Taylor’s failure to cite any legal authority in support of his position invokes the procedural bar; thus, this Court is under no duty to consider his assignment of error.
*112 ¶ 66. Furthermore, it has been held by the Mississippi Supreme Court that the jury must be informed of the precise charge against the accused, and providing such information is a duty of the trial court. Wood v. State, 275 So.2d 87, 89 (Miss.1973). The circuit judge did not violate Taylor’s right to due process or right to a fair and impartial jury by reading the indictment to the venire. Thus, we find this assignment is also without merit.
¶ 67. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE; COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; COUNT IV, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; COUNT V, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS; AND COUNT VI, SHOOTING INTO AN OCCUPIED DWELLING, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
LEE, C.J, IRVING, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.

.Parker testified that Taylor said: "Y'all better be gone when I get back.” Samuel testified that Taylor said: "Y’all better not be here when I get back.” Adams’s daughter, Philet-ta Adams, testified that Taylor said: "Everybody better be in the house at 12 o’clock because I’m going to shoot this corner up.”

. Parker testified that Warren was referring to Taylor even though the two were not brothers.

. Lampkin was the only victim who did not testify at trial.

. The State points out that Adams could not have seen Brown with the pistol on the day of the shooting because she testified that she was not at home the day of the shooting, and she did not return home until the next day.