980 So.2d 951 (2007)
Josh Kirk DAVIS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-CA-00719-COA.
Court of Appeals of Mississippi.
October 9, 2007.
Rehearing Denied February 19, 2008.
*953 Cynthia Ann Stewart, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before MYERS, P.J., BARNES and ROBERTS, JJ.
BARNES, J., for the Court.
¶ 1. Josh Kirk Davis appeals the denial of his motion for post-conviction relief by the Circuit Court of Yazoo County, Mississippi. Finding no error, we affirm.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. On July 29, 2000, Nicki Campbell, age seventeen, was swimming and fishing at a deer camp in rural Yazoo County, along with Davis, William "Bubba" Arnold, Blake McNeer, Megan Smith, and Nicki's cousin, Michelle Campbell. Michelle was also Davis's girlfriend. At one point during the evening, Arnold, age forty-six, made unwelcome sexual advances toward Nicki. An argument ensued, and Arnold brandished a shotgun and told Nicki and the rest of her friends to leave the property. They went to Michelle's house where, a short time later, they informed Nicki's father, Clifton Campbell (hereinafter "Campbell"), of the incident. Upset, Campbell left the house with Davis, age fifteen, and went to Arnold's cabin. According to Davis, in his third and final statement to law enforcement authorities, Campbell pointed a shotgun at him, told Davis to fire the shotgun, and then said, "You do it or you die." Davis said he complied and fired three shots through a broken glass pane in the door into the cabin. Davis stated that, although he could not see Arnold, he knew Arnold would be lying on the sofa where Davis had seen him earlier that evening. Arnold was killed by a shotgun blast to the face.
¶ 3. Michelle and Megan, in the meantime, went back to the cabin and saw Campbell and Davis running from the cabin with Campbell holding the shotgun. Campbell pointed the gun at the girls and told them not to say anything or he would kill them. It was at that point Davis told the girls that he had fired the gun.[1] Michelle, Megan and Davis went to the cabin where they found Arnold lying on the couch dead. They returned to Michelle's home and, at this point, Davis professed his innocence.
¶ 4. Davis and Campbell were indicted in the Circuit Court of Yazoo County, Mississippi, of the capital murder of Arnold with the underlying felony of burglary. The trials were severed, and Davis was tried by a jury who convicted him of murder less than capital; he was sentenced to life in prison. Davis's conviction was appealed to the Supreme Court of Mississippi and *954 affirmed on July 17, 2003. See Davis v. State, 849 So.2d 1252 (Miss.2003). On October 6, 2004, Davis filed an "Application for Leave to File Motion for Post-Conviction Relief." Davis's application was granted, and he filed a "Motion for Post-Conviction Relief and Supporting Authorities" in the Circuit Court of Yazoo County on December 3, 2004. Attached to the motion was an affidavit by Dr. William Owen[2] which suggested that the fatal shot that killed Arnold was from close range and, therefore, contradicted Davis's testimony that he killed Arnold. The circuit court, upon review of the evidence, and after hearing testimony from Dr. Owen and other experts, denied Davis's motion for post-conviction relief from which he now appeals.

STANDARD OF REVIEW
¶ 5. "[T]he appropriate standard of review for denial of post-conviction relief after an evidentiary hearing is the clearly erroneous standard." Johns v. State, 926 So.2d 188, 194(¶ 29) (Miss.2006). "However, where questions of law are raised the applicable standard of review is de novo." Brown v. State, 731 So.2d 595, 598(¶ 6) (Miss. 1999).
I. WHETHER TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN FAILING TO INVESTIGATE AND DISCOVER POSSIBLE DEFENSES.
¶ 6. Davis states that he was not afforded effective assistance of counsel at trial based on trial counsel's "half-hearted attempt" to suggest someone else fired the fatal shot that killed Arnold and the failure to investigate and present the claim as a credible defense.[3] While counsel is not required to exhaust every conceivable avenue of investigation, he or she must at least conduct sufficient investigation to make an informed evaluation about potential defenses. Ross v. State, 954 So.2d 968, 1005(¶ 84) (Miss.2007). From the autopsy report, testimony, and exhibits, it appears that three shotgun blasts struck Arnold. Davis argues that, based on information contained in Dr. Owen's affidavit, there is credible evidence to show that the fatal shot could not have come from the doorway, where Davis was located, but rather from close range. Dr. Owens testified that his affidavit was based on the autopsy results, his view of the crime scene and his interview with Davis, who told Dr. Owen he only fired the gun once through the opening in the door. Therefore, Dr. Owen reasoned that Davis fired into a dead body thereby rendering Davis not guilty of murder. Mississippi Rule of Evidence 702 allows expert testimony regarding non-scientific matters when:
the witness's knowledge, skill, experience, training, or education qualify him as an expert in a given field, and (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case.
*955 Ross, 954 So.2d at 996-97(¶ 57).[4]
¶ 7. The State claims that this issue is barred by res judicata since Davis raised the issue of ineffective assistance of counsel on direct appeal. However, where a defendant raises ineffective assistance of counsel on direct appeal, and raises it again in a post-conviction relief proceeding "supported by extraneous materials that were not available on direct appeal, our consideration of the issue is not barred by res judicata." Hodges v. State, 949 So.2d 706, 717(¶ 21) (Miss.2006). As Davis has brought forth the ineffective assistance of counsel claim based on new information provided by Dr. Owen's testimony, it is not barred from our review, and we will address the merits of Davis's claim.
¶ 8. To succeed on a claim of ineffective assistance of counsel, Davis must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (U.S.1984). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Davis v. State, 743 So.2d 326, 333(¶ 5) (Miss.1999) (quoting Stringer v. State, 454 So.2d 468, 477 (Miss.1984)). "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691, 104 S.Ct. 2052. Whether a decision to not investigate is reasonable can depend on strategic choices made by the defendant and on information supplied by the defendant. Id. For example, if a defendant gives counsel "reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id.
A defendant who alleges that trial counsel's failure to investigate constituted ineffectiveness must also state with particularity what the investigation would have revealed and specify how it would have altered the outcome of trial, Nelson v. Hargett, 989 F.2d 847 (5th Cir.1993), or "how such additional investigation would have significantly aided his cause at trial." Merritt v. State, 517 So.2d 517, 518 (Miss.1987).
Cole v. State, 666 So.2d 767, 776 (Miss. 1995). Our review of an attorney's performance is "highly deferential to the attorney, with a strong presumption that the attorney's conduct fell within the wide range of reasonable professional assistance." Ross, 954 So.2d at 1004(¶ 79). Every effort should be made to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Crawford v. State, 867 So.2d 196, 203(¶ 8) (Miss.2003). In this instance, we find that it was reasonable for Davis's attorney not to hire an expert witness to discover whether there was evidence of another shooter who might have killed Arnold. Davis confessed to shooting Arnold three times, which was consistent with evidence presented in the autopsy report and witnesses's testimony.[5] There is nothing *956 in the record to suggest that Davis ever made a statement prior to trial to the effect that he only fired one shot.
¶ 9. Davis additionally argues in his reply brief that the circuit court applied an erroneous standard in its finding regarding ineffective assistance of counsel. Davis states that the standard to prove prejudice under Strickland is whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (emphasis added). This Court has reiterated the standard in Strickland, "[o]nly where there is a reasonable probability that without counsel's errors the outcome of the trial would have been different will the appeals court find ineffective representation." Forbes v. State, 771 So.2d 942, 948(¶ 12) (Miss.Ct. App.2000) (citing O'Halloran v. State, 731 So.2d 565, 569(¶ 9) (Miss.1999)). The trial court found, after listening to testimony at the evidentiary hearing and reviewing the record, that Davis failed "to prove by a preponderance of the evidence that the affidavit of Dr. Owen or the testimony of Dr. Owen produces reasonably satisfactory evidence to support the factual allegations in the motion for his request for relief." The judge went on to state, "[a]s far as the ineffective assistance of counsel, based on the testimony of Attorney Evans as well as the incorporation of the trial transcript, the Court finds that it would not have changed the outcome of the trial." We find that, although the wording of the circuit court's application of the Strickland standard at the evidentiary hearing lacked the appropriate terminology, we find no error in the outcome.
¶ 10. Therefore, in regards to whether the performance by Davis's attorney prejudiced the defense, we find that while Dr. Owen's affidavit and testimony did set forth, with specificity, a claim for an alternate defense theory, the results were not sufficient to counter the evidence already presented. In other words, even if Mr. Evans had obtained similar expert testimony setting forth such factual allegations, it would have still been weighed against the other evidence of Davis's confessions to law enforcement and to Michelle and Megan, which were consistent with the autopsy results. We cannot find that the evidence presented at the hearing established a reasonable probability that the introduction of such evidence would have "altered the outcome of the trial." In making a determination of ineffective assistance of counsel, a court "must consider the totality of the evidence before the judge or jury." Strickland, 466 U.S. at 695, 104 S.Ct. 2052. Davis confessed to firing three shots at Arnold in his statement to the police and in his conversation with Michelle and Megan. We find no error in the circuit court's ruling that there was insufficient evidence to show that the defense was prejudiced by counsel's failure to investigate.
II. WHETHER THE GRANTING OF JURY INSTRUCTION NO. 6 DEPRIVED DAVIS OF HIS CONSTITUTIONAL RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
¶ 11. Davis argues that jury instruction No. 6 failed to instruct the jury *957 "in any coherent fashion" of what they must find in order to find Davis guilty as an aider and abettor. The State asserts that this issue of the jury instruction should have been brought on direct appeal. Mississippi Code Annotated section 99-39-21(1) (Rev.2000) states:
Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.
Davis rebuts the State's claim saying that the State never objected to this issue in the evidentiary hearing and, therefore, should be barred from bringing forth the issue of procedural bar. However, the petitioner, Davis, has the burden of proving that no procedural bar exists. Crawford, 867 So.2d at 202(¶ 5). We also disagree with Davis and find that the State did bring forth an objection at the hearing. Specifically, counsel for the State said during the evidentiary hearing that the issue of the jury instruction does not fall "within the guidelines of what's allowable on post-conviction relief" and that it should have been a matter handled on direct appeal.[6] The circuit court ruled, and we concur, that the issue of the aiding and abetting instruction would not be allowed before the court as it was not an issue that the circuit court could "rely on to grant relief."
¶ 12. Procedural bar aside, Davis argues that the wording in jury instruction No. 6 constituted error in that it did not confine the jury to a finding that Davis intended to commit the specific crime of murder but rather if he intended to violate any law. This would mean, according to Davis, that he could have been convicted under the instruction if he was merely an accessory after-the-fact. Jury instruction No. 6 read:
The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
If another person is acting under the direction of the defendant or if the defendant joins another person and perform acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such persons just as though the defendant had committed the acts or engaged in such conduct.
Before any defendant may be held criminally responsible for the acts of others, it is necessary that the accused associate himself in some way with the crime and participate in it with the intent to bring about the crime.

Of course, mere presence at the scene of a crime and knowledge that a crime is being committed are not sufficient to establish that a defendant either directed or aided and abetted the crime unless you find beyond [sic] reasonable doubt that the defendant was a participant and not a knowing spectator.

*958 In other words, you may not find any defendant guilty unless you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by some person or persons, and that the defendant voluntarily participated in its commissions [sic] with the intent to violate the law.

(Emphasis added). The granting of a jury instruction that does not fully instruct on the elements of the crime amounts to plain error. Berry, 728 So.2d at 571(¶ 6). However, "[j]ury instructions are to be read together and taken as a whole with no one instruction taken out of context." Austin v. State, 784 So.2d 186, 192(¶ 18) (Miss. 2001) (citations omitted).[7] The jury instruction at issue is identical to the standard aiding and abetting instruction adopted by the Mississippi Supreme Court in Milano v. State, 790 So.2d 179 (Miss. 2001). The Mississippi Supreme Court recognized in Milano the confusion inherent in such instructions and thereby adopted the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting to avoid such future confusion and litigation. The aiding and abetting jury instruction in Milano mentioned the specific crime in the jury instruction. The jury, however, was fully instructed that if all the elements were not proven beyond a reasonable doubt, Milano was to be found not guilty. In the case before us, the instruction, although general in its application in the last paragraph, specifically states in paragraph three that the accused associate himself with "the crime." We understand this phrasing to apply to the crime being charged against the defendant, in this case murder. All the elements of the crime of aiding and abetting are clearly set forth in the instruction. "Accordingly, the jury could not have been confused when all instructions were considered and read together." Id. at 185(¶ 20). Therefore, we find that the granting of the jury instruction was not error.
III. WHETHER FAILURE TO MAKE OBJECTION TO JURY INSTRUCTIONS AT TRIAL DENIED DAVIS DUE PROCESS AND HIS RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS.
¶ 13. As we have found no error as to the issue of the jury instruction at trial, we find counsel's failure to object to the jury instruction did not constitute deficient performance.

CONCLUSION
¶ 14. All of the arguments asserted by Davis are without merit. Davis knowingly and voluntarily confessed to shooting Arnold. We find, as did the circuit court, that there was not adequate evidentiary basis presented in the post-conviction proceeding to support Davis's claims for relief. There was no showing of prejudice as the result of allegedly deficient counsel. Additionally, Davis's claims of error regarding the granting of the jury instruction are procedurally barred and without merit. The holding of the trial court is affirmed as to all issues.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF YAZOO COUNTY DISMISSING THE MOTION FOR POST-CONVICTION COLLATERAL RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
*959 KING, C.J., LEE AND MYERS, P., JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Michelle testified that Davis initially told her, "I shot him. I shot that mother ****er three G** d*** times."
[2] William D. Owen, M.D. is a former coroner from Smith County, Mississippi and was a physician in the United States Army. He was also a family practitioner in Smith County for several years.
[3] Wesley Evans, one of the attorneys for Davis at trial, was assigned by the court to assist Davis's original counsel, Mike Rushing, with the trial. Evans testified that, had he been given more time, he would have hired an expert. Evans also stated at the evidentiary hearing that he could not recall if he asked for a continuance.
[4] After a Daubert hearing, the trial court ruled that, based on Dr. Owen's experience and training in autopsies, his testimony as to the autopsy results would be allowed. However, the evidence in the affidavit by Dr. Owen regarding the blood spatter patterns and position of the spent cartridges was not allowed as Dr. Owens was not found to be qualified to testify as an expert in those areas.
[5] The autopsy performed by Dr. Stephen Hayne showed that two to three shotgun wounds were present. The arbitrarily selected first wound was a "lethal, distant shotgun wound" to the right side of the face. The second and/or third struck the left side of the face and also involved two fingers of the left hand, consistent with defensive posturing. Additionally, Stark Hatchock, an employee at the Mississippi Crime Lab, testified at trial and at the hearing that all the spent cartridges present at the crime scene came from the same weapon.
[6] As there was no objection to the given instruction at trial, it "results in a procedural bar on appeal, unless its granting amounts to plain error." Berry v. State, 728 So.2d 568, 571(¶ 6) (Miss.1999) (citing Sanders v. State, 678 So.2d 663, 670 (Miss.1996)).
[7] The record does not contain any other jury instructions granted at trial, only the single jury instruction at issue in this case.