# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-CA-00499-COA

LONNIE ULMER A/K/A LONNIE E. ULMER JR.                    APPELLANT

v.

STATE OF MISSISSIPPI                                              APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 03/21/2018 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS M. FORTNER |
| | VALERIE MOSS ANDREWS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  ABBIE EASON KOONCE |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | REVERSED, VACATED AND REMANDED 03/17/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE J. WILSON, P.J.,  LAWRENCE AND C. WILSON, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.     Lonnie Ulmer pled guilty to second-degree murder in 2014.[1]  He was sentenced to a term of forty years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years to serve, the remainder suspended, and five years of post-release supervision.  Ulmer subsequently filed a motion for post-conviction relief (PCR) and raised three issues: (1) his plea was not knowingly, intelligently, and voluntarily made; (2) he received ineffective assistance of counsel; and (3) there was no factual basis for his plea to

---

[1] Ulmer was originally indicted for first-degree murder in 2011.

second-degree murder.

¶2. Following an evidentiary hearing, the circuit court denied Ulmer's motion. Ulmer appealed. After review, we find Ulmer's plea was not knowingly, intelligently, and voluntarily made as result of the erroneous advice given to him by his trial counsel. Finding this issue dispositive, we decline to address Ulmer's remaining issues. Accordingly, we reverse the denial of post-conviction relief, vacate Ulmer's guilty plea and remand this case to the Forrest County Circuit Court for further proceedings.

**FACTS**

¶3. Before Ulmer pled guilty in 2014 to second-degree murder, his attorney told him he would be eligible for "trusty-earned time," which included thirty days' credit for every thirty days served. In other words, Ulmer was under the impression that he would only have to serve half of whatever sentence he received when he pled guilty to second-degree murder. That was not the case. After Ulmer was incarcerated, he learned that the crime of second-degree murder was ineligible for trusty-earned time.[2] Ulmer filed his PCR motion on January 6, 2017, and claimed that his plea was involuntary. Specifically, he argued that he relied on erroneous advice from counsel.

¶4. Ulmer attached an affidavit to his PCR motion from his trial attorney, Candance Rickman. Rickman's affidavit and evidentiary hearing testimony indicates that she was

---

[2] Mississippi law and MDOC policies define which crimes are eligible for trusty-earned time. *See* Miss. Code Ann. § 47-5-138.1 (Rev. 2015).

2

appointed to represent Ulmer in 2014. In 2013, the Mississippi Legislature denominated the crime of second-degree murder in Mississippi Code Annotated section 97-3-19(1)(b) (Rev. 2006); 2013 Miss. Laws ch. 555, § 1 (S.B. 2377); *see also* 97-3-19(1)(b) (Supp. 2019). The district attorney informed Rickman that the State was willing to reduce Ulmer's charge from deliberate-design murder, which carried a sentence of life imprisonment, Mississippi Code Annotated §§ 97-3-19(1)(a) & -21(1) (Supp. 2013), to second-degree murder, which carried a potential sentence of twenty to forty years in the MDOC's custody. Miss. Code Ann. §§ 97-3-19(1)(b) & -21(2) (Supp. 2013). Rickman stated that she and "other public defenders throughout the state believed that a sentence for second-degree murder would be eligible for trusty-earned time." Mississippi Code Annotated section 47-5-138.1 (Supp. 2014) permitted trusty-earned time, allowing certain offenders to received credits of thirty days off their sentences for every thirty days served. In her affidavit and sworn testimony, Rickman testified that she told Ulmer he would be eligible for trusty-earned time. Notably, Rickman stated, "[B]ased on that advice, I believed Lonnie Ulmer pled guilty to second-degree murder. I do not believe that he would have pled guilty if he had been advised that the twenty[-]year sentence would have to be served day for day."

¶5.     Ulmer also submitted a sworn statement of specific facts within his personal knowledge in accordance with Mississippi Code Annotated section 99-39-9(1)(d) (Supp. 2009). Ulmer stated that based on Rickman's advice, he thought he was eligible for trusty-earned time when he pled guilty to second-degree murder. He also stated that because he had

3

already served four years in Forrest County jail, he thought he would only have to serve six more years if he received the sentence of twenty years recommended by the State and if he received credit for time served. Finally, Ulmer stated, "I pled guilty upon the advice of my attorney [] that I would be eligible for trusty-earned time. If my attorney had correctly advised me that I was not eligible for trusty-earned time, I would not have pled guilty."

¶6. After reviewing Ulmer's PCR motion, the circuit court held an evidentiary hearing. Rickman testified at the hearing consistently with her affidavit. Again, Rickman admitted that she had erroneously informed Ulmer that he was eligible for trusty-earned time. Rickman also testified that she did not think Ulmer would have pled guilty if she "had told him correctly that he would have to serve day for day." The circuit court produced two written orders denying the relief requested in the PCR motion. From that denial, Ulmer perfected his appeal to this Court.

## STANDARD OF REVIEW

¶7. We review the denial of post-conviction relief after an evidentiary hearing under a clearly erroneous standard. *Johns v. State*, 926 So. 2d 188, 194 (¶29) (Miss. 2006). "A finding of fact is 'clearly erroneous' when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made." *Id*. "This Court must examine the entire record and accept that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the

lower court's findings of fact." *Id*. (quoting *Mullins v. Ratcliff*, 515 So. 2d 1183, 1189 (Miss. 1987)). "[T]he trial judge, sitting in a bench trial as the trier of fact, has sole authority for determining credibility of the witnesses." *Id*.

## ANALYSIS

¶8. Ulmer argues that his plea was not knowing, intelligent, and voluntary because he was affirmatively misinformed by counsel that he would receive trusty-earned time if he pled guilty to the reduced charge of second-degree murder, and he pled guilty in reliance on that erroneous information. As a result, Ulmer also argues that his counsel's assistance was ineffective.

¶9. A plea is involuntary if a defendant is affirmatively misinformed regarding the possibility of parole and pleads guilty in reliance on that information. *See Fairley v. State*, 834 So. 2d 704, 706 (¶5) (Miss. 2003); *see also Washington v. State*, 620 So. 2d 966, 967-70 (Miss. 1993). When a defendant claims that he received ineffective assistance of counsel "[i]n the context of a guilty plea, the defendant must show that his counsel's errors proximately resulted in the guilty plea and, but for counsel's error, the defendant would not have engaged in the guilty plea." *Magee v. State*, 270 So. 3d 225, 229 (¶16) (Miss. Ct. App. 2018) (internal quotation marks omitted). "Our supreme court has held that a defendant who alleges that his plea is not voluntary because of his reliance on his attorney's faulty advice regarding the possibility of parole, is entitled to an evidentiary hearing on the question of voluntariness." *Stewart v. State*, 845 So. 2d 744, 747 (¶10) (Miss. Ct. App. 2003) (citing

5

*Washington v. State*, 620 So. 2d at 967).

¶10.    Here, the circuit court held an evidentiary hearing and denied the relief requested by Ulmer.  In fact, the court issued two orders—the order denying the PCR motion and the order clarifying the order denying the PCR motion.  The first order was filed on March 21, 2018, and the second (clarifying) order was filed on February 7, 2019.  In both orders, the circuit court stated that Ulmer's claim (that he pled guilty in reliance on advice from his attorney that he would receive trusty-earned time) was "belied by the **transcript of the plea hearing** and his **petition to plead guilty** to second-degree murder."  (Emphasis added).  The circuit court also referenced the fact that Ulmer was informed of his constitutional rights, his minimum and maximum sentences, the nature of the charge, and the consequences of his plea.  In the order clarifying judgment, the circuit court did not add any additional facts or analysis to Ulmer's first issue that his plea was not knowing, intelligent, and voluntary.[3]

¶11.    At the outset, it should be noted that the facts of this case are strikingly similar to *Tiller v. State*, 440 So. 2d 1001, 1002 (Miss. 1983).  In *Tiller*, the supreme court reviewed a case in which the defendant alleged he had entered a guilty plea in reliance on his attorney's advice that he would be eligible to earn "good time" toward early release.  *Id*.  The supreme court reiterated that "mistaken advice of counsel may in some cases vitiate a guilty plea."  *Id*. at 1006 (citing *Baker v. State*, 358 So. 2d 401 (Miss. 1978)).  The court further

---

[3] The clarifying order addressed in more detail the other issues:  ineffective assistance of counsel and insufficient factual basis for his plea.

found that at the time Tiller's plea was entered, "earned time" was being granted for those convicted of armed robbery and that Tiller's attorney, apparently aware of this, informed his client of such, and Tiller then chose to plead guilty. *Id*. About seven months later, the MDOC modified its "good time" policy, and Tiller was not eligible for any more good-time credit. *Id*. at 1003. The court found that Tiller's guilty plea "was substantially infected by erroneous advice of counsel regarding his eligibility for good time." *Id*. at 1006. Most importantly, the supreme court reversed and remanded for an evidentiary hearing, finding that "[i]f [Tiller] can prove what he has alleged, Tiller's plea as a matter of law was involuntary." *Id*. at 1002. The facts of this case were proven by affidavits and by testimony during the evidentiary hearing.

¶12. Here, after hearing those facts at the evidentiary hearing, the circuit court found that Ulmer's proof was "belied" by the plea colloquy and the plea petition. During Ulmer's plea hearing, the circuit judge asked Ulmer if anyone had "promised" him "anything" or "threatened" him to get him to plead guilty and Ulmer answered, "[N]o sir," to both questions. The only information the judge discussed with Ulmer concerning his sentence or the amount of time he could serve was whether he understood the "minimum and maximum sentences that could be enrolled on this plea" and if Ulmer understood that as "originally charged" he could have received a "life in prison" sentence. That is the extent of the plea transcript as it concerns the issues before this Court on the PCR motion.

¶13. The circuit court's factual determination that the plea transcript "belied" the testimony

7

presented by affidavits and during the evidentiary hearing is clearly erroneous. During the plea colloquy, the judge did not discuss or mention Ulmer's eligibility of trusty-earned time. Further, nowhere in the plea hearing transcript did the judge inform Ulmer that any term of incarceration would be served day for day. Simply put, the judge did not say anything that could contradict or make Ulmer question the advice he had received from his attorney.[4]

¶14.    Since the plea transcript does not contradict the proof presented by Ulmer, we must now move to the plea petition. Ulmer signed the plea petition and the answers therein sworn to under oath. The plea petition does not address any of the issues raised in the PCR motion. The plea petition stated that the range of the sentence was twenty to forty years. Further the plea petition had two other general statements that may provide some limited probative value to the question before this Court:

> I believe that my attorney has done all that anyone could do to counsel and assist me, and I am satisfied with the advice and help my attorney has given me.
>
> . . . .
>
> I also understand that if I plead 'GUILTY' the Court may impose the same punishment as if I had pled 'NOT GUILTY,' stood trial and was convicted by a jury. I also understand that the sentence imposed is up to the Court, that the Court is not required to carry out any understanding made by me and my attorney with the District Attorney, and further the Court is not required to

---

[4] It is not unusual that the circuit judge did not question Ulmer concerning any advice his attorney may have given him. The judge had no idea or any way to know or suspect that Rickman provided Ulmer erroneous advice. Further, the judge could not be expected to envision that a lawyer would simply guess at and answer such an important legal question without researching the answer or at least calling the MDOC to seek an answer.

8

follow the recommendation, if any, of the District Attorney.

The **plea petition** did not mention trusty-earned time, parole, or early release. The plea petition did not mention day-for-day time or an MDOC policy or the fact that the court or the attorney cannot control the ultimate application of Mississippi law or MDOC policy. Thus, the plea petition did not contradict in any shape or form Ulmer's erroneous expectation about trusty-earned time, parole, or early release. The petition's statement that the judge could sentence a person to the maximum sentence did not alleviate Ulmer's erroneous assumption as a result of the wrong advice given by his attorney. Had the plea petition contained the standard language included in some written petitions, that neither the circuit court nor anyone else could guarantee or give advice as to early release or parole and that those decisions are a matter between the individual and the MDOC, maybe the plea petition would have, in fact, "belied" the testimony presented by Ulmer. As it stands, it was clearly erroneous for the circuit court to conclude the plea petition belied the testimony presented in the sworn affidavits or the testimony produced at the evidentiary hearing.

## CONCLUSION

¶15. In conclusion, we find that Ulmer's plea was not knowingly, intelligently, and voluntarily entered because he pled guilty in reliance on erroneous advice from counsel. Therefore, we reverse the denial of post-conviction relief, vacate Ulmer's guilty plea, and remand this case to the active docket of Forrest County Circuit Court for further proceedings consistent with this opinion.

9

¶16.   **REVERSED, VACATED AND REMANDED.**

   **BARNES, C.J., J. WILSON, P.J., WESTBROOKS, TINDELL, McDONALD, McCARTY AND C. WILSON, JJ., CONCUR.  GREENLEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY CARLTON, P.J.**

   **GREENLEE, J., DISSENTING:**

¶17.   Because I find that Ulmer was not entitled to post-conviction relief, I dissent.

¶18.   Our "standard of review for [the] denial of [post-conviction relief] after an evidentiary hearing is the clearly erroneous standard." *Kidd v. State*, 221 So. 3d 1041, 1043 (¶8) (Miss. Ct. App. 2016) (quoting *Davis v. State*, 980 So. 2d 951, 954 (¶5) (Miss. Ct. App. 2007)).  "A finding of fact is 'clearly erroneous' when . . . the reviewing court . . . is left with [a] definite and firm conviction that a mistake [was] made." *Johns v. State*, 926 So. 2d 188, 194 (¶29) (Miss. 2006) (citing *Bryan v. Holzer*, 589 So. 2d 648, 659 (Miss. 1991)).  However, questions of law are reviewed de novo. *Mosley v. State*, 150 So. 3d 127, 130 (¶6) (Miss. Ct. App. 2014) (citing *Purnell v. State*, 126 So. 3d 949, 951 (¶4) (Miss. Ct. App. 2013)).  That said, Ulmer bore "the burden of showing that he [was] entitled to relief by a preponderance of the evidence." *Watkins v. State*, 170 So. 3d 582, 585 (¶10) (Miss. Ct. App. 2014).

¶19.   On appeal, Ulmer argues that the circuit court erred by finding Ulmer's guilty plea was voluntary.  The majority agrees with Ulmer, holding that it was clearly erroneous for the circuit court to conclude that the plea colloquy and plea petition contradicted the evidence and claims presented by Ulmer.  According to the majority, the plea-hearing transcript and the plea petition "did not contradict in any shape or form Ulmer's erroneous expectation

10

about trusty-earned time, parole, or early release." *Ante* at (¶14). I disagree for the following reasons.

¶20.    For a defendant's plea to be knowing, intelligent, and voluntary, the trial judge "must advise the defendant of his rights, the nature of the charge against him, and the consequences of his plea, including the applicable minimum and maximum sentences." *Worth v. State*, 223 So. 3d 844, 850 (¶19) (Miss. Ct. App. 2017).

¶21.    A review of the transcript of Ulmer's plea hearing shows that the circuit court advised Ulmer of his rights, the nature of the charges against him, and the consequences of his plea. As noted by the majority, the court asked Ulmer if he understood the minimum and maximum sentences of second-degree murder and that his potential sentence would otherwise be life in prison if he was convicted of deliberate-design murder. Additionally, the court asked Ulmer if he had discussed his plea petition with Rickman and whether he understood everything contained in the petition. That plea petition explicitly stated, in part:

> I know that if I plead "GUILTY" to the charge(s) of [second-degree murder] the possible sentence which may be imposed upon me is imprisonment for a term of from 20 years (minimum) to 40 years (maximum) and/or fined an amount of $ _____ (minimum) to $10,000 (maximum).

Thus, it is clear the circuit court fully advised Ulmer of the nature of the charge, the effect of his plea, and his possible sentence. Ulmer responded that he understood he was waiving his rights and the nature of his possible sentence. It therefore *appears* that Ulmer's plea was knowing, intelligent, and voluntary.

¶22.    But a plea may be rendered involuntary if the "defendant is affirmatively misinformed

11

regarding the possibility of parole and pleads in reliance on the misinformation." *Thomas v. State*, 881 So. 2d 912, 916 (¶10) (Miss. Ct. App. 2004) (citing *Fairley v. State*, 834 So. 2d 704, 706 (¶8) (Miss. 2003)). "An allegation that the defendant pled guilty in response to counsel's mistaken advice *may* vitiate the plea, because it indicates the defendant may not have been fully aware of the consequences of the plea." *Sylvester v. State*, 113 So. 3d 618, 622 (¶12) (Miss. Ct. App. 2013) (emphasis added) (quoting *Readus v. State*, 837 So. 2d 209, 212 (¶9) (Miss. Ct. App. 2003)). "[W]hen the movant attaches an affidavit of another who supports the allegation, the trial court may be required to conduct an evidentiary hearing." *Id.* at 621 (¶10). When the only support the defendant offers is his own affidavit, and it "is contradicted by unimpeachable documents in the record," the supreme court has held that an evidentiary hearing is not required and that the trial court may summarily dismiss the PCR motion. *Gable v. State*, 748 So. 2d 703, 706 (¶12) (Miss. 1999).

¶23. In other words, the law requires the circuit court to determine whether Ulmer presented sufficient evidence that he was erroneously advised of his eligibility to receive trusty-earned time. Ulmer attached two affidavits and a personal statement to his PCR motion. The first affidavit, "Affidavit of Candance Rickman," was from his attorney at the time he entered his guilty plea. In it, Rickman acknowledged that she misadvised Ulmer that "if he pled guilty . . . to Second Degree Murder and the sentence was twenty (20) years, he would receive Trusty Earned Time of thirty (30) days extra credit for every thirty (30) days he served and that he could be released after serving a total of ten (10) years." According

12

to Rickman, she "d[id] not believe that [Ulmer] would have pled guilty if he had been advised that the twenty (20) year sentence would have to be served day for day." The second affidavit, "Affidavit of Rossie McCormick," was from Ulmer's mother. McCormick stated that Rickman also informed her of Ulmer's eligibility to receive trusty-earned time. She also stated that Ulmer told her over the phone that "he would [have never] pled guilty to Second Degree Murder if he had been advised that he would have to serve the twenty (20) year sentence day for day." Finally, Ulmer attached a personal statement to his PCR motion. Ulmer stated that he "pled guilty based upon the advice of [his attorney] that [he] would be eligible for Trusty Earned Time." He further stated that he would not have pled guilty had he known he was not eligible for trusty-earned time.

¶24.     "Our supreme court has held that a defendant who alleges that his plea is not voluntary because of his reliance on his attorney's faulty advice regarding the possibility of parole, is entitled to an evidentiary hearing on the question of voluntariness."[5] *Stewart v. State*, 845 So. 2d 744, 747 (¶10) (Miss. Ct. App. 2003) (citing *Washington v. State*, 620 So. 2d 966, 967 (Miss. 1993)). Ulmer made these allegations in the context of trusty-earned time in his PCR motion, and his allegations were corroborated by affidavits in the record. Therefore, Ulmer was entitled to (and granted) an evidentiary hearing.

¶25.     A circuit court may summarily dismiss a movant's PCR motion without conducting

---

[5] *See Sylvester*, 113 So. 3d at 623 (¶19) (finding that Sylvester's eligibility for trusty-earned time was "analogous to eligibility for parole or the [regimented-inmate-discipline] program").

an evidentiary hearing *if* the misunderstanding that was created by the erroneous advice was *corrected* by the circuit court during a voluntariness inquiry. *Sylvester*, 113 So. 3d at 623 (¶17) (citing *Thomas*, 881 So. 2d at 917 (¶13)). To determine whether the circuit court corrected the erroneous advice, this Court has reviewed the contents of a plea-hearing transcript and a petitioner's guilty-plea petition. *See id.*; *Thomas*, 881 So. 2d at 917 (¶13) (reviewing the plea transcript and noting that the plea petition was indiscernible because it was not in the record); *accord Rodolfich v. State*, 858 So. 2d 221, 224 (¶11) (Miss. Ct. App. 2003).

¶26. The majority holds that it was clearly erroneous for the circuit court to conclude that the plea hearing and plea petition "belied," or contradicted, the evidence presented by Ulmer. *Ante* at (¶¶12-14). I disagree.

¶27. Both the majority and Ulmer rely heavily on *Tiller v. State*, 440 So. 2d 1001 (Miss. 1983). *Ante* at (¶11). In that case, Tiller petitioned for leave to withdraw a guilty plea entered for an indicted charge of armed robbery. *Tiller*, 440 So. 2d at 1002. In his petition, Tiller alleged that he entered his plea in reliance upon bad advice given by his attorney concerning his eligibility to earn "good time" toward early release while in custody. *Id.* That advice was contrary to the law at the time it was given. *See id.*; *accord* Miss. Code Ann. §§ 47-7-3, 47-5-139 (Supp. 1982); *cf. Odom v. State*, 498 So. 2d 331, 334 (Miss. 1986) (distinguishing *Tiller* by finding that the attorney's advice to Odom was correct at the time it was given and thus affirming the circuit court's judgment denying Odom's motion to set

14

aside his guilty plea). Without granting an evidentiary hearing, the circuit court summarily dismissed Tiller's petition, finding that his petition and affidavit "failed to demonstrate a reasonable probability to grant the relief requested." *Id.* at 1003. On appeal, our supreme court reversed the circuit court's dismissal and remanded the case to provide Tiller the opportunity to prove *by an evidentiary hearing* that his allegation rendered his plea involuntary as a matter of law. *Id.* at 1006.

¶28. I find *Tiller* distinguishable from the instant case. *Tiller* is one case that is part of a long line of cases that hold a petitioner is entitled to an evidentiary hearing if he has alleged that he entered his guilty plea in substantial reliance upon the erroneous advice regarding his "good time" eligibility. *Tiller*, 440 So. 2d at 1006; *see also*, *e.g.*, *Coleman v. State*, 483 So. 2d 680, 681-84 (Miss. 1986); *Thinnes v. State*, 196 So. 3d 204, 209-10 (¶¶15-22) (Miss. Ct. App. 2016); *Sylvester*, 113 So. 3d at 623 (¶19). Unlike *Tiller*, the circuit court here granted Ulmer an evidentiary hearing to review the merit of his claims. It was not until after that hearing that the circuit court ruled the plea transcript and plea petition "belied" Ulmer's evidentiary-hearing testimony and evidence.

¶29. The majority further contends that because the circuit court did not discuss Ulmer's eligibility of trusty-earned time at the plea colloquy, and because the plea petition did not mention trusty-earned time, parole, or early release, it was error for the circuit court to find that the plea transcript and plea petition belied Ulmer's evidence. *Ante* at (¶¶13-14). At the plea colloquy, the circuit court asked:

15

[COURT]: Has anybody led you to expect [that] the State or the District Attorney [would] recommend any sentence less than [forty years with twenty years served]?

[Ulmer]: No, sir.

[COURT]: Do you understand the minimum and maximum sentences that could be enrolled on this plea?

[Ulmer]: Yes, sir.

[COURT]: As originally charged, it would be life in prison; do you understand that?

[Ulmer]: Yes, sir.

. . . .

[COURT]: Has anybody *promised* you anything in order to get you to plead guilty?

[Ulmer]: No, sir.

(Emphasis added). Further, the plea petition stated, in part:

I also understand that if I plead "GUILTY" the Court may impose the same punishment as if I had pled "NOT GUILTY," stood trial and was convicted by a jury. I also understand that the sentence imposed is up to the Court, that the Court is not required to carry out any understanding made by me and my attorney with the District Attorney, and further the Court is not required to follow the recommendation, if any, of the District Attorney.

In his subsequent petition and accompanying affidavits, Ulmer claims that his attorney promised that he (Ulmer) would be eligible for trusty-earned time if he pled guilty to second-degree murder. But at the plea hearing, Ulmer stated he was not promised anything to plead guilty to second-degree murder. Therefore, it is clear that the plea hearing and plea petition

16

contradict his claims now on appeal.

¶30.    Additionally, because the circuit court asked Ulmer if he had received any promises regarding his plea, it was Ulmer's responsibility at that time to inform the circuit court of his attorney's promise to trusty-earned time.  The majority makes light of this fact in a footnote: "It is not unusual that the circuit judge did not question Ulmer concerning any advice his attorney may have given him [because] [t]he judge had no idea or any way to know or suspect that Rickman provided Ulmer erroneous advice." *Ante* at n.4.

¶31.    That said, the circuit court in this case was vested with the duty to determine issues of credibility.  *See Sharp v. State*, 152 So. 3d 1212, 1214 (¶10) (Miss. Ct. App. 2014) (finding that the trial judge, "sitting as the trier of fact, is tasked with resolving all credibility issues that arise in a PCR hearing").  After conducting the evidentiary hearing and listening to the testimony of the parties, the circuit court made those credibility determinations and found that the plea hearing and plea petition belied Ulmer's PCR claims and proof.  Given that, and the fact that a contradiction clearly exists in the record, I cannot conclude that circuit court's decision was clearly erroneous.  *Johns*, 926 So. 2d at 194 (¶29) (citing *Bryan*, 589 So. 2d at 659).

¶32.    Notwithstanding that conclusion, I add that our supreme court has stated that earned time *may* be awarded by the MDOC and that the earning of "time" is a matter of grace or privilege.  *Ross v. State*, 584 So. 2d 777, 779 (Miss. 1991) (interpreting Mississippi Code Annotated section 47-5-142(1)-(2) (Supp. 1990)).  In *Sylvester*, this Court reiterated that

notion: "The Legislature clearly empowered MDOC with the sole authority to grant [trusty-time, earned-time, and meritorious-earned-time allowances]."[6] *Sylvester*, 171 So. 3d at 533 (¶9) & n.3. Because of this fact, defense attorneys should be reluctant to give promises to defendants about MDOC policies because those policies are subject to the discretion of the MDOC. However, if the attorney does make such promise to the defendant (that he or she will be eligible for earned-time allowances as part of the guilty plea), then it is ripe for discussion with the judge at the time of the plea hearing, not two or more years after the fact.

¶33. Finally, it is no secret that as time passes, evidence may erode, making it difficult for the State to prove its case. Thus, allowing defendants to vacate their guilty plea years after it was entered may, in certain circumstances, be fraught with danger. For the forgoing reasons, I dissent.

**CARLTON, P.J., JOINS THIS OPINION.**

---

[6] *See* Miss. Code Ann. § 47-5-138.1(1) (Supp. 2014) ("[A]n offender in trusty status as defined by the classification board of the [MDOC] may be awarded a trusty-time allowance of thirty (30) days' reduction of sentence for each thirty (30) days of participation . . . ." (emphasis added)); Miss. Code Ann. § 47-5-138(5) (Supp. 2014) ("[A]ny inmate may receive an earned time allowance of four and one-half (4½) days for each thirty (30) days served if the department determines that the inmate has complied with the good conduct and performance requirements of the earned time allowance program."); Miss. Code Ann. § 47-5-138(6) ("The department shall develop rules, terms and conditions for the earned-release program," and "[t]he commissioner shall designate the appropriate hearing officer within the department to conduct revocation hearings for inmates violating the conditions of earned-release supervision." (emphasis added)); Miss. Code Ann. § 47-5-142(2) (Rev. 2011) ("Subject to approval by the commissioner of the terms and conditions of the program or project, meritorious earned time may be awarded . . . .").

18